69  561
81   77
81  180

## No. 2379.

## S. M. FARMER *v.* THE STATE OF TEXAS.

1. BENEVOLENT ASSOCIATION—CORPORATION.—A corporation known as the "Masonic Mutual Benevolent Association" announced in its charter that its object was to provide for its members during life, and for their families after death.  To accomplish this a contract is made with each member who joins it, that for a sum of money paid, and for designated instalments, of money to be paid afterwards, the association will, ninety days after his death, pay to designated beneficiaries a sum graduated in amount according to the length of time he lives after being a member. An examination by a physician is required of each member.  Membership is foreited by non-payment of assessments.  *Held:*

    (1) The contract has all the elements of a life insurance policy, and though it may be entered into for benevolent purposes, the corporation can not legally exist unless incorporated in accordance with the laws of the State regulating the incorporation of insurance companies.

    (2) The association can not be legally incorporated as a benevolent association under title 20 of the Revised Statutes.

2. CASES APPROVED.—Bolton v. Bolton, 73 Maine, 299; The State v. Citizens Association, 6 Missouri Appeals, 163; The State v. Merchants Association, 72 Missouri, 146; People v. Wilson, 46 New York, 477; and The State v. Standard Life Association, 35 Ohio State, 281, approved.

3. STATUTE CONSTRUED.—The act of March 28, 1885, which adds article 2991a to the Revised Statutes, applies to no other associations than those organized under title 20, Revised Statutes.  The twenty-seventh subdivision of article 566, Revised Statutes, which provides for the incorporation of mutual relief associations, was repealed before the act of March 28, 1885, was passed.

APPEAL from Tarrant.  Tried below before the Hon. R. E. Beckham.

*Hogsett & Greene,* for appellant: That the said association was legally incorporated under title 20 of the Revised Statutes, cited Revised Statutes, articles 564, 566, 637, 638; Acts of 1885, pages 62, 63; Splawn v. Chew, 60 Texas, 634; May on Insurance, 550a; Sedgwick's Statutory and Constitutional Law, second edition, pages 227-9; Hirshl Law of Fraternities and Societies, pages 12-14.

If the association was, prior to the act of March 28, 1885, subject to any of the provisions and requirements of the general insurance laws of the State, said act relieved it therefrom and fixed its status as a benevolent association. (Acts of 1885, pages 62, 63; Morawetz on Private Corporations, first edition, sections 11, 199, 456; State v. Mutual Protective Association of Ohio, 26 Ohio State, 19; Commercial League Association v. People, 90 Illinois, 166; State v. Iowa M. A. A., 12 Northwestern Reporter, 782; Supreme Counsel of Chosen Friends, 62 Howard, 386; State v. Bankers and Merchants M. B. A., 23 Kansas, 499; Commonwealth v. N. M. A. A., 94 Pennsylvania State, 481.

*R. L. Carlock, D. P. Ayres* and *J. S. Hogg,* for appellee: Insurance is a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event. (May on Insurance, chapter 1, section 1; State rel. Beach v. Citizens Benefit Association, 6 Missouri Appeals, 163; 6 Central Law Journal, 491; State v. Merchants Exchange Mutual Benevolent Society, 72 Missouri, 146; Commonwealth v. Weatherbee, 105 Massachusetts, 149; Bolton v. Bolton, 73 Maine, 299; State ex rel. Attorney General v. Critchett et al., Minnesota *Supreme Court,* 1887; People ex rel. Blossom v. Nelson, 46 New York, 477; Bangor v. Masonic Lodge, 73 Maine, 429; State v. Farmers and M. M. Benevolent Association, 18 Nebraska, 276.)

A private corporation in Texas is not authorized except the purpose be either religious, or for charity or benevolence, or for profit; and if its object is not religious, charitable, or benevolent, it is subject to taxation and to the rules and regulations of that class of incorporations to which it belongs. (Title 20, articles 564, 566, 637, 638, Revised Statutes; General Laws of 1885, pages 62, 63; Revised Statutes, articles 2910, 2911, 2928, 2943; State Constitution, article 8, section 2.)

**WILLIE, CHIEF JUSTICE.** This was an information in the na-

ture of a quo warranto, instituted in the court below for the purpose of ousting the appellants from certain corporate franchises which they were claiming to exercise under the name of the "Masonic Mutual Benevolent Association of Texas." The result of the trial below was a judgment of ouster against the appellants, upon the ground that they were acting together as an insurance company under the above name, without having been incorporated in accordance with the laws of our State regulating the incorporation of insurance companies. From this judgment the appellants have appealed to this court.

The appellants claim to be a corporation under a charter dated September 3, 1883, amended February 23, 1885, obtained under title 20 of the Revised Statutes. The charter states the object of the association to be "to provide for its members during life, and their families after death, by issuing to its members certificates payable from one to three thousand dollars at death; and also for the purpose of issuing endowment certificates payable during life at intervals to its members; and other charitable purposes set forth in the constitution and laws governing the body."

The only purposes set forth in its constitution are "to give financial aid and benefits to members during life, and to their families or those depending upon them after death, and to pay weekly sick benefits to its members," etc.

The evidence disclosed that the original incorporators were seven in number, and that five of these were by the charter made directors. The constitution provides that the incorporators of the association shall be its directors, and that its officers shall be chosen from its incorporators. None others but master masons in good standing, or those who had demitted, and their wives, their widows and unmarried daughters, were made eligible to membership in the association; and if from age or infirmities the husband could not become a member, the wife might do so.

The theory of the Constitution was that three forms of certificate might be issued, but in practice only two were issued. One of these—Form A—was issued to each member for one thousand dollars, upon consideration of seven dollars cash, and the payment of an advance assessment thirty days thereafter, and an agreement to pay the mortuary assessments for each month thereafter till death, within ninety days from the required proof of death, payment was to be made to the

beneficiaries as follows: If the death occurred within one year, one-fifth—two hundred dollars; if after one, and before two years, two-fifths—four hundred dollars; if after the second, but before the expiration of third year, six hundred dollars.

Form B entitled each member to two hundred dollars death benefit fund for his heirs, and permitted him to participate in the "Endowment Fund" of one thousand dollars by instalment of two hundred dollars each, during his life from time to time, as the five coupons attached thereto matured. This form too seems to have fallen into disuse. No person could become a member who was under twenty-one years of age, or who suffered from age or infirmities. The application for membership provided that it should form part of the contract with the association, and the agreement of the association to make payments is based upon the consideration of the payments made and to be made by the member. The assessments upon these certificates were graduated according to the age of the member holding one, the younger member being required to pay less than those of more advanced age. The same rule was observed in the collection of assessments upon the death of a member. If assessments were not paid within thirty days after notice to a member, he was to be suspended from the benefits of the association.

What is termed a "Permanent Fund" was provided from the admission fees and by taking at the rate of twenty-five cents out of each assessment paid by a member upon one thousand dollars, and this was to be invested by the directors and used, first, to defray the necessary expenses of management, and second, to insure stability and perpetuity by paying claims in Forms A and B, where the rate of mortality was so great that that twelve assessments per annum would not suffice.

General traveling agents were to be appointed to solicit members; and the membership fee generally went to pay for their services. Twenty per cent of assessments went to pay expenses of the association, including salaries of officers. The president received a salary of forty dollars per month, the secretary, sixty, and the treasurer two and one-half per cent of the money received and paid out. Members totally incapacitated for work from sickness, or who were in actual distress, received three dollars per week during their sickness, if sick not less than one week nor more than five. Persons applying for membership were required to be examined by a physician, and could

not be received unless they certified that they were in good health. These are some of the leading features of the association; and the first question we are to determine is, whether it was entitled to be incorporated under Title 20 of our Revised Statutes. This title defines corporations to be of three kinds: First, religious; second, corporations for charity or benevolence; and third, corporations for profit. This corporation is not of a religious character, and it is admitted by the appellants that its purposes are not charitable. It is claimed, however, that it was established for a benevolent object, and its incorporation was therefore legal under this title, and it should be allowed to exist without interruption from the State authorities.

It is clear from the division into classes made by the statute, taken in connection with subsequent articles under the same title, that corporations for benevolence are entirely distinct from those whose main object is pecuniary profit. In article 566 are enumerated in twenty-seven subdivisions the different purposes for which corporations may be chartered under that title. Under the second subdivision only can the present body claim to be chartered as a benevolent association. In none of the other subdivisions is the subject of benevolence referred to; and in all which relate to corporations of profit, the special object of the charter is particularly stated, except in the twenty-seventh subdivision, which seems intended to cover all purposes of mutual profit or benefit not embraced in the preceding portions of the article. This twenty-seventh subdivision was repealed by act of March 27, 1885. In other titles of the Revised Statutes are found special provisions for the incorporation of insurance and railroad companies, and these must be followed in all cases when it is sought to have these institutions chartered by general law. If the body under consideration is a benevolent institution, it was properly incorporated under title 20; but if its object is profit, then its incorporation under that title will be valid or not accordingly as it comes under any of the heads named in article 566 to which we have referred.

What, then, are the purposes of the body under consideration? Its charter makes its object to provide for its members during life and their families after death. This is apparently a benevolent object; but how is this to be accomplished? The association makes a contract with each member when he joins it that for the consideration of a certain sum of money paid in cash, and other sums to be paid in future, which he agrees to

do, that they will, ninety days after proper proof of his death, pay to certain beneficiaries a certain sum, graduated in amount, according to the length of time he lives, and, of course, according to the amount of assessments he has paid into the treasury. Before anyone can enter into such a contract he must undergo a regular examination as to his health, habits, occupation, and as to his family, and how much insurance upon his life, etc. A physician must make an examination as to his bodily condition, and accordingly as he is sufficiently sound and of a certain age is he accepted into the fraternity.

This contract has all the features of a life insurance policy. It is a contract by which one party for a consideration promises to make a certain payment of money upon the death of the other; and it is well settled that whatever may be the terms of payment of the consideration by the assured, or the mode of estimating or securing payment of the insurance money, it is still a contract of insurance, no matter by what name it may be called. (Comm. v. Weatherbee, 105 Mass., 149; State v. Farmer's Benevolent Association, 18 Nebraska, 281.)

It is in effect the ordinary contract made by insurance companies with the assured, differing from it in no important respect. The terms of payment are somewhat different, the amount being greater or less, accordingly as the member lives long or dies early; still it is a payment to be made at his death. The assured can not be forced by suit to pay future premiums; but he loses his membership if he defaults in this respect. It is a common provision in insurance policies that if the assured fails to perform some of the conditions of his contract, that his policy may be canceled, and the premiums paid, shall, in that event, become forfeited to the company. The provision that membership may be forfeited for non-payment of assessments is in effect the same thing, for the assessments serve the purposes of premiums in an ordinary life policy. The examination which precedes admission into membership is the same as that which occurs before the issuance of a policy, and is intended to secure the society against fraud or imposition; to prevent an unsound person from becoming insured, and to reduce its risks of loss, or increase its chances of profit.

It matters not that the member was entitled to benefits in case of sickness. Insurance can be effected upon the health as well as the life of an individual. These benefits, too, are incidental to the main object of the institution, and the certificates

issued by it are none the less policies of insurance, though the insured derive sums of money from the contract other than those for which he has specially bargained.

We are of opinion, therefore, that the appellants constituted an insurance company within the spirit and true meaning of that term, and not an association conducted in the interest of benevolence, as contemplated by Title 20 of our Revised Statutes. This question has been frequently before the courts of other States, and so far as we can ascertain, has been universally decided in accordance with the opinion above expressed.

In Bolten v. Bolten, 73 Maine, 299, the subject underwent thorough investigation, and an institution with purposes similar to the present, was held a mutual life insurance company. In State v. Lietehelt, 32 Northwestern Reporter, 787, the Supreme Court of Minnesota held a company, formed by unmarried men with the purpose of endowing the wife of each member upon marriage with a sum of money equal to the then number of members, not to be a benevolent association. The members paid a *quid pro quo*, and did not receive their money as an act of benevolence on the part of their fellow members.

In State v. Texas Benevolent Association, supra, a society with a constitution like the present, was held an insurance company, within the meaning of a statute similar to our own.

The benefits received are not gratuitious. They are due to the member on account of the money he pays into the society. It takes the risk of his continued existence and good health. If it be benevolence to pay our money under such circumstances then every mutual life insurance company is acting in a benevolent manner towards the family of an insured member when it pays the policy it had issued them for a money consideration. It matters not what name the association may assume. The law looks to the real objects of the body and not to the name indicative of benevolence which it may have assumed.

These views will be found supported by the following authorities in addition to those already cited: May on Insurance, section 550; State v. Citizens Association, 6 Missouri Appeals, 163; State v. Merchants, etc., Association, 72 Missouri, 146; People v. Wilson, 46 New York, 477; State v. Standard Life Association, 38 Ohio State, 281.

In some of the States these societies have been exempted by special statute from the requirements exacted of other insurance companies. In Illinois a special statute, which provides that

"associations intended to benefit widows, orphans, heirs and devisees of deceased members, and when no annual dues are required, and when the members receive no money as profit or otherwise should not be deemed insurance companies." Hence it is, of course, held in that State that a society with the features prescribed and lacking in those excepted by the statute is not an insurance company. It is admitted that without such a statute they would be included in the general sense of that term. Com'l League v. People, 70 Illinois, 166. In Ohio a statute declares that such associations should, in no manner, be subject to the laws of the State relating to life insurance companies. Hence the decisions of that State are inapplicable to the present case. (State v. Mutual Protective Association of Ohio, 26 Ohio State, 19.) The decision in Comm. v. National Mutual Aid· Association, 94 Pennsylvania State, 481, is expressly founded upon a statute of similar character. And we think this will be found to hold true as to all cases which hold such societies exempt from statutory provisions as to other insurance companies. (See Supreme Council v. Fairman, 62 Howard's Practice, 386; State v. Bankers Association, 23 Kansas, 499.)

But the appellants contend that by the act of our Legislature of March 28, 1885, they are recognized as a benevolent association,· and their incorporation as such declared valid by the Legislature. That act adds article 2971a to the Revised Statutes at the end of title 53, which relates to insurance companies. It provides that it shall not be construed to affect or in any way apply to mutual relief associations organized and chartered under title 20 of the Revised Statutes, * * * which has no capital stock, and whose relief funds are created and sustained by assessment, made upon the members of said associations, in accordance with their several by laws and regulations, provided that the principal of every such benevolent organization shall be required to make an annual statement under oath to the department of insurance on the first of January of each year, or within sixty days thereafter, showing certain facts,. and among others the salary paid each officer, the gross amount of money received each year and from what sources, the amount paid to policy holders on assessments to pay losses, etc., etc. If the report is not made the company is to be deemed an insurance company, conducted for profit of its officers, and amenable to the laws governing such companies. It was proven that this association had made its reports regularly in accordance with this law.

In our opinion, the statute applies to no other associations ex-
cept those organized under title 20, Revised Statutes, for benev-
olent purposes.  If organized for profit, the law did not intend
to change their nature, or declare that to be benevolent which
was not so in reality.  It was clearly aimed at associations that
had obtained charters as benevolent institutions, but were
using their charters for purposes of gain to their officers.  By
requiring of all such societies to make a report of the character
set forth in the statute, if such report was fairly made, their
true purposes could be ascertained; and, if benevolent, they
might still exist free from the requirements of title 53; but, if
managed for the purposes of profit to their officers, they would
be deemed insurance companies, subject to the provisions of
that chapter.  This is the penalty provided for a failure to re-
port.  The conclusion presumptive to be drawn from such fail-
ure is that the society is managed in the interest of its officers;
and it certainly follows that, if the report showed that fact, the
association was to be deemed of the same character, and as
such, amenable to the law of the land for doing an insurance
business without its authority.  The same result will neces-
sarily follow if the report shows it a benevolent body, whilst the
actual fact is to the contrary.  The State is not bound by the
report, but may proceed to test its correctness in a proceeding
like the present.

The evil the statute intended to remedy was the conducting
of an insurance company for the profit of its officers, under the
guise of benevolence and in evasion of the insurance laws.  The
statute recognizes the existence of mutual benefit societies claim-
ing to be benevolent.  It proposes to test whether they are
really so, or carried on for the profit of their officers.  It gives
them an opportunity of establishing their benevolent nature by
reporting certain named facts from which this question can be
determined.  If they fail to make the report the presumption
is conclusive that it would disclose their object and effect to
be the emolument of their officers by means of a life insurance
business.  If the report showed this to be their true character,
they were not to be exempted from the burdens imposed on
other insurance companies.  There was not such virtue in the
report itself as would shield the society from the consequences
of an act against which the statute was attempting to provide.
If the report upon its face showed that the purpose of the or-
ganization was benevolent, no conclusive presumption to that

effect was established.  The society could not protect itself by incorrect statements.  The State used the best means it could suggest to call to account such corporations as were flying the flag of benevolence and yet doing business for the benefit of its officers.  If this failed to disclose their true character, it did not intend to deprive itself of all power to ascertain that character by other appropriate evidence; to allow violators of the law to escape upon their own statement of their innocence.  Hence in this case it was proper to inquire into all facts tending to show whether the appellants were a benevolent association, and as an insurance company conducted for the gain of its officers. We have seen that they were doing business as an insurance company.  That the officers reaped heavy profits is also apparent.  Of the large sums collected, a large share went to pay their salaries and perquisites, and very little of the balance was accounted for.  The society was largely in debt, and the value of its property was comparatively small.  The record does not disclose what was stated in its annual reports.  It is presumable that these and other facts already alluded to did not appear therein, or the proper department would have declared the institution what it really is, and what the statute of 1885 denounced.  As such, it was subject to the present proceeding, and to have its charter canceled.

It is proper to remark here that the appellants can derive no assistance from the twenty-seventh subdivision of article 566, Revised Statutes, which provides for the incorporation of mutual relief associations; for that subdivision was repealed before the act of March 28, 1885, was passed.  To claim an existence as a benevolent body, at the date of the latter act, it was their duty to show that they were such within the meaning of title 20, as it stood amended when that act was passed.

We think the judgment below was correct, and it is affirmed.

*Affirmed.*

Opinion delivered January 31, 1888.