**AMERICAN INS. UNION v. LOWRY.**

No. 6598.

Circuit Court of Appeals, Fifth Circuit.

Dec. 22, 1932.

Rehearing Denied Jan. 17, 1933.

210

Claude V. Birkhead and Harold K. Stanard, both of San Antonio, Tex., for appellant.

R. F. Spencer and A. J. Lewis, both of San Antonio, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

A verdict for more than $29,000 was directed for Mrs. Lowry against American Insurance Union on a policy of insurance on the life of her husband. The policy was in his possession about a month without his hav-ing paid or definitely agreed to pay anything for it. From this result the union has appealed. The pleadings are a voluminous interchange of allegations, culminating in a prayer by the union for a reformation of the policy in equity, which was denied in directing the verdict as above stated. The controlling questions are: Was the policy a certificate of membership in a fraternal benefit society? Was it ineffective for want of delivery and prepayment of first premium? Did the terms of the policy waive the prepayment stipulated for in the application?

█ The union has a charter, granted under the laws of Ohio, and a constitution providing for a lodge system, a ritualistic form of work, and a representative government in general conformity to the definition of a fraternal benefit society under Revised Statutes of Texas, art. 4820. It had a license to do business as such in Texas during 1929, and had many "chapters" in the state which, are testified to be active as such. The applications for membership used by it both before and after the month of July, 1929, required the signature by applicants of a solemn obligation to comply with the laws of the union then or thereafter in force, to obey its lawful orders, to refuse to do or permit fraud or wrong to the society or any member of it, not to recommend any one for membership of unsound health or immoral character, not to betray its secrets, and to submit on violation of the obligation to expulsion without disclosing passwords, signs, or grips. The constitution provided that an applicant should not become a "beneficial member" until his application is approved by the medical director, he has paid all required premiums and dues, and has been elected, obligated, and initiated in accordance with the laws of the society and his certificate delivered to him while in good health. During the month of July, 1929, when Lowry's application was taken, another form was in use. Lowry's application and the accompanying medical examination are in substance an ordinary application for life insurance. No reference whatever is made to the union as being a fraternal benefit society, or to its objects, constitution, or laws. The thing applied for is repeatedly called a policy of insurance, and not a certificate of membership. Premiums are spoken of, and not dues. Membership is mentioned but once in connection with an agreement that the statements of the application are to be warranties "for the purpose of inducing the American Insurance Union to receive me into the beneficial membership of said society," which might imply

a distinction from general membership. Nothing was required of Lowry in the way of initiation, obligations, lodge work, or the like. The policy issued does speak of receiving Lowry into the union's membership, and makes several references to the charter, constitution, and laws of the society as governing certain matters touching the insurance, but it is otherwise an elaborate modern policy of life insurance. Thus it styles itself always, and refers to Lowry as the insured and not as a member of the union. The union's contract with the agent who took the application is dated July 1, 1929, and is a typical insurance agency contract, authorizing him to "procure applications for life insurance in the American Insurance Union" in a territory comprising fifty-three counties in Texas, and binding him to write a very large minimum each year. There is in its sixteen printed pages no reference to making members, establishing chapters or lodges, giving grips and passwords, or to any fraternal or charitable object, but the only talk is of insurance and premiums and commissions. The agent testifies he never initiated any one further than to take the applications on the current form. In this agent's territory at least, and certainly in the dealings with Lowry, we think the union was departing from fraternal benefit work, and was attempting to write life insurance. If so, the transaction must be tested by the laws of Texas relating to that subject. Berry v. Knights Templars' (C. C.) 46 F. 439, affirmed (C. C. A.) 50 F. 511; National Union v. Marlow (C. C. A.) 74 F. 775; Corley v. Travelers' Protective Association (C. C. A.) 105 F. 854; Modern Order of Praetorians v. Bloom, 69 Okl. 219, 171 P. 917; 19 R. C. L., Mutual Benefit Societies, p. 1186; See, also, Farmer v. State, 69 Tex. 561, 7 S. W. 220. This is the earnest contention of Mrs. Lowry, who seeks thereby to escape the provisions of the constitution and laws of the union which would, if applied, greatly endanger and certainly reduce her recovery. She cannot complain at the results of applying that law.

The application for insurance contains a stipulation that the insurance shall take effect from the date of the acceptance of the risk if the premium is prepaid, but if not "there shall be no liability hereunder until a policy shall be issued and delivered, and the first premium thereon actually paid during the lifetime and good health of the person proposed for insurance." The premium, which was elected to be paid quarterly, was not prepaid; nor did the application so indicate. The agent, however, owed Lowry an amount equal to half the first quarterly premium, which the agent had agreed to offset as representing his half of that premium, but it was also agreed between them that Lowry should pay the union's half in cash on delivery of the policy. This understanding was unknown to the union. The policy was issued at Columbus, Ohio, and dated September 10, 1929, but the premium rate fixed in it was higher than that proposed in the application, so that the policy was not an exact acceptance of the offer made in the application and Lowry was not bound to take it. It was mailed to the local agent under the general instructions in his agency contract "not to deliver any policy on which the first premium has not been fully settled during the good health of the applicant and within sixty days from the date the examination was actually made." The agent could not find Lowry in his office so as to deliver the policy. Lowry had just taken a position in Torreon, Mexico, and had moved thither. About October 1st he visited Texas, and called to ask if the policy had come. The agent was out of town, but a subagent told Lowry that it had arrived but could not be delivered until the premium was paid. Lowry asked to be permitted to take the policy out for inspection, and on his promise to return it was allowed to do so. He took it to Mexico, and was not again seen by the subagent or by the agent, though sought for. On these facts the presumption of delivery and the consequent presumption that the necessary premium had been paid which would arise from Lowry's possession of the policy, Miller v. Life Ins. Co., 12 Wall. 303, 20 L. Ed. 398, is fully rebutted. Bostick v. New York Life Ins. Co. (C. C. A.) 284 F. 256. His possession is shown to be wrongful and not in pursuance of a delivery to him and without payment of the first premium which he had agreed and had been reminded was a condition precedent to the effectiveness of the policy. That such a condition may be thus imposed upon the issuance of the policy, and must be fulfilled, is generally held, New York Life Ins. Co. v. Horton (C. C. A.) 9 F.(2d) 320; Jackson v. New York Life (C. C. A.) 7 F.(2d) 31; 14 R. C. L., Insurance, § 77, and is recognized in Texas. Denton v. Kansas City Life Ins. Co. (Tex. Civ. App.) 231 S. W. 436.

But it is argued that the union is estopped to deny that the policy is in force because for thirty-three days no objection was made to Lowry's keeping it. The circumstances under which Lowry got the policy were such that he could not have been misled,

and his absence from the country prevented the agent making objection. The home office was never notified that Lowry had the policy. There is no basis for an estoppel. It is further urged that, notwithstanding an attempt in the policy to limit the agent's powers, under the agency contract he had credit with the union for first premiums collected for sixty days after the policy was sent him, and that the agent might therefore on his own account extend a similar credit to the insured and thus cause in effect a prepayment of the premium, citing Amarillo National Life Insurance v. Brown (Tex. Civ. App.) 166 S. W. 658; Miller v. Life Ins. Co., 12 Wall. 285, 20 L. Ed. 398; Smith v. Provident Savings Society (C. C. A.) 65 F. 765. The shortest answer to the argument is that whatever may have been the agent's authority to extend credit for the company's half of the premium, he did not extend any. Nor could the company justly have collected the premium from the agent, from whom the policy had been wrongfully taken.

It is also argued that the agent's testimony was impeached by that of Mrs. Lowry, who testified that the agent had told her after her husband's death that the policy had been delivered and was in force, and that the officers of the company had told him that they were liable for the face of the policy but were hesitating about the double indemnity. The agent had previously on cross-examination testified that he had not told Mrs. Lowry the policy was delivered or was in force, but only that her husband had it in his effects, and he denied having told her that the officers of the union admitted any liability. This cross-examination was itself improper, and not a basis for proving contradictory statements. What an agent says while he is doing an act within the scope of his agency, dum opus fervet, is admissible as original testimony, is a part of the res gestæ; but after the fact, unless the agent's authority extends to determining liability and making adjustments, he could not bind his principal by such admissions as that delivery had been made or that the policy was in force. La Abra Mining Co. v. United States, 175 U. S. at page 499, 20 S. Ct. 168, 44 L. Ed. 223. Again what the agent said the company's officers had said about liability is mere hearsay. Mrs. Lowry's testimony was admitted only to contradict and impeach the agent, but it was not allowable even for that purpose, for impeachment by contradictory statements must be upon a material matter, and what the agent had testified as we have pointed out was immaterial and inadmissible, and ought

to have been excluded to begin with. Chicago, etc., R. R. v. Artery, 137 U. S. at page 521, 11 S. Ct. 129, 34 L. Ed. 747. The subagent is the only witness who knew the facts attending Lowry's getting possession of the policy, and there was no attempt to contradict or impeach her. We find no evidence on which it could be held that full payment of the first premium had either been made or waived.

But it is said the language of the policy annulled that of the application about prepaying the premium, and while increasing the rate it proposed credit for each of the quarterly premiums until the end of its quarter, a proposal that Lowry on reading it was entitled to accept by merely keeping the policy. The language found in the face of the policy is: "Annual Premium. $337.60. Payable $89.40 quarterly on or before the tenth day of December, March, June and September during the first policy year at the national office of the society or as provided under the general provisions on the following pages hereof in exchange for the society's official receipt. Commencing with the second anniversary date and annually thereafter insured will pay an increasing premium rate * * * as stipulated in paragraph 16 hereof." The general provisions, aside from those relating to extended insurance after the policy has been in force some time, contain nothing with reference to payment of premiums except this: "This policy is based upon the payment of premiums annually *in advance*, but premiums may be made payable in quarterly or semi-annual instalments. * * * If any premium be not paid when due, this policy shall be void except as herein provided. * * * In the payment of any premium *under this policy except the first* a grace of twenty days without interest will be allowed. * * * No representative has power in behalf of the society to make or modify this or any other contract of insurance or *to extend the time* for the payment of a premium." The contention is, and it prevailed on the trial, that the language first quoted, the numbers and dates being typewritten upon a printed form, may mean that the first quarterly premium is to be paid December 10, 1929, the second on March 10, the third on June 10, and the fourth on September 10, 1930, and since September 10, 1929, the date of the policy, necessarily passed by before the policy could be delivered and become effective, it could not reasonably be the September 10th which was meant, and that the rule should be applied that ambiguities are to be resolved against the insurer,

who chose the ambiguous language. Prudential Ins. Co. v. Stewart (C. C. A.) 237 F. 70, 6 A. L. R. 766. It is also argued that the stipulation about prepayment in the application is to be ignored because the policy did not accept the offer of the application in that a higher premium was charged, and because in case of conflict the policy provision should override that of the application. New York Life Ins. Co. v. Tolbert (C. C. A.) 55 F.(2d) 10. In reply we say that the application is attached to the policy and expressly made a part of it, as by Texas law is both permitted and required. Rev. St. 1925, arts. 5050, 4732 (3). The two ought to be construed together in case of ambiguity as portions of the same instrument. Hurt v. New York Life Ins. Co. (C. C. A.) 51 F.(2d) 936. This would be true though the composite instrument be only an offer to contract. We find here a case of ambiguity rather than contradiction. In construing the language in question it is to be noticed that the dates named are those "during the first policy year" and that "commencing with the second anniversary date" different premiums will be due. The anniversary date is referred to several times in the policy with reference to various benefits and liabilities. We think the meaning is that the fixed date of the policy, September 10, 1929, and not the uncertain date of delivery, is to begin the count of policy years as well as to determine the due date of all premiums. This construction of the policy would make the September 10th of the first policy year to be September 10, 1929, its initial date. True it is that in case of delay in delivery such as occurred here there may elapse a substantial period when there was no liability on the insurer, and for which a full premium ought not to be paid. That injustice is partly offset by the hastened accrual of benefits that depend on the anniversary date, and if the unjustice seems great to the insured he might ask for a reduction of that premium. Far more serious is the objection to the other construction which would make the premium not only for the first quarter but for every subsequent quarter that the policy remains in force to become due only at the quarter's end. The insurance would thus be not on a cash in advance basis, but on a credit basis. If the company's business were done in that way there would be many losses by failures to pay for past protection and a continual loss of interest on the entire premium income. It is testified that in accordance with the custom of insurance companies the rates of the union are all figured on a basis of premiums prepaid, and that serious losses would result if they are not so paid. Not only does the application here stipulate for advance payment of the first premium, but the policy declares that there can be no grace allowed on it, and that the policy is based on the payment of premiums in advance. This is also the requirement of Texas law. Rev. Stats. of 1925, art. 4732, declares what life insurance policies issued or delivered in the State must contain, and the first requirement is "that all premiums shall be payable in advance," and the second is that grace of at least one month shall be granted on all premiums except the first. The next, article 4733, states what the policy shall not contain. If the forbidden provisions are inserted the effect of the statute is to put them out. First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S. W. 550. By parity of reasoning when the required provisions are omitted, the law, which becomes a part of all contracts, writes them in. Southland Life Ins. Co. v. Hopkins (Tex. Civ. App.) 219 S. W. 254. The requirement of the statute for premiums in advance is certainly enough to resolve any uncertainty or conflict in the provisions of the policy and application in favor of a construction that would require premiums in advance of rather than after protection given. We think the first premium was due on September 10, 1929, or so soon thereafter as the policy was tendered, and that the policy imposed no liability until the premium was paid or settled for.

We are aware that the cited articles of the Revised Statutes are not applicable to fraternal benefit societies operating as such. Article 4823; Sovereign Camp, Woodmen of the World, v. Nigh (Tex. Civ. App.) 223 S. W. 291. But as pointed out above, this is an attempted life insurance, and by doing such business the union brings itself within the definition of a life insurance company in article 4716 and the articles which follow apply to its policies. Mutual insurance is under the same law. Article 4819.

We find no occasion for equitable relief, especially since the policy is functus officio. There is ambiguity, but in the light of the statutes it can be resolved. Explanation is needed, but not reformation.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.