**MOST WORSHIPFUL PRINCE HALL GRAND LODGE, F. & A. M. OF TEXAS, Appellant,**

v.

**CITY OF FORT WORTH et al., Appellees.**

**No. 16970.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 22, 1968.

Rehearing Denied Dec. 27, 1968.

E. Brice Cunningham, Dallas, for appellant.

S. G. Johndroe, Jr., City Atty., Fort Worth, for appellees.

## OPINION

RENFRO, Justice.

The plaintiff, Most Worshipful Prince Hall Grand Lodge, F. & A. M. of Texas, brought suit under the Declaratory Judgment Act seeking judgment declaring it to be a charitable institution and therefore exempt from taxation by the City of Fort Worth and the Fort Worth Independent School District under the provisions of Sec. 2, Art. VIII of the State Constitution, Vernon's Ann.St., and Sec. 7, Art. 7150, Vernon's Ann.Tex.Civ.St.

From an adverse summary judgment plaintiff appealed.

The Constitution provides that the legislature may, by general laws, exempt from taxation institutions of public charity. Art. VIII, Sec. 2, Constitution.

Public charities are exempt from taxation by Art. 7150, Sec. 7, V. A. T. S.

In 1967 the Legislature added Sec. 22, applying to Fraternal Organization, to Article 7150. Since the delinquent taxes involved herein accrued prior to the effective date of Sec. 22, the plaintiff must and does rely upon the provisions of Sec. 7 and the decisions construing said section.

The Legislature in Sec. 7 provided, "Public charities.—All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not. An institution of purely public charity under this article is one which dispenses its aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the

recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

Because of the nature of the case and the length of the record we must necessarily write in more detail than is our wont.

In its first amended original petition plaintiff described two separate pieces of real property owned by it which for brevity we will call Headquarters and Mosque property.

It plead it "is an institution that extends its charity or relief to worthy persons and its own members in accord with its own fixed adopted laws, rules, and ancient customs and is an institution which dispenses its aid to its members and others in sickness or distress or at death without regard to poverty or riches of the recipient, aid and administer in any way to the relief of its members when in want, sickness and distress and to educate and promote scholarship, among other things"; the Headquarters "was purchased by the Plaintiff for operation of a Grand Lodge Headquarters therein, and from the date of acquisition, Plaintiff immediately went about converting the premises to its own service by making the necessary improvements for the Grand Lodge Headquarters, thus putting the premises to the purpose for which they had been purchased and for which Plaintiff was created as a charitable institution as hereinbefore defined"; that the Mosque property "was purchased by the Plaintiff for operation of a Masonic Mosque therein, and from the date of acquisition Plaintiff immediately set about converting the premises to its own service by making the necessary improvements for the Masonic Mosque, thus putting the premises to the purpose for which they had been purchased and for which Plain-

tiff was created as a charitable institution, * * * ."

The City for itself and the School District entered a general denial and filed a cross-action against the Lodge for taxes due upon the Headquarters and Mosque properties.

It is our understanding that plaintiff does not question the amount of taxes, its whole defense being an exemption from all ad valorem taxes.

In a supplemental answer defendant denied that plaintiff was an institution of purely public charity used exclusively by plaintiff for charitable purposes and plead that plaintiff was a secret fraternal organization using the property for lodge meetings and social purposes and that the usual and customary work of plaintiff is fraternal, educational, and social.

In plaintiff's first amended original answer to the cross-action of the City plaintiff alleged that "it is an institution which dispenses its aid to worthy persons and its own members and others in sickness or distress or at death without regard to poverty or riches of the recipient, aid and administer in any way to the relief of its members when in want, sickness and distress and to educate and promote scholarship, inter alia, and therefore is an 'Institution of purely public charity,' exempted under the laws hereinabove set out."

Plaintiff filed a motion for summary judgment based on the claim that it was an institution of purely public charity and a charitable and benevolent institution; that its real property was owned and used exclusively by plaintiff.

Affidavit of The Grand Master was attached to the motion. He swore that the property of the plaintiff located on Evans Avenue in Fort Worth was used exclusively for its charitable purposes and operations and no one else has used said property; the "Mosque" property is used solely for holding the annual Communications at which time charity and relief are dispensed; no

other person owns or uses said building; plaintiff was not organized for profit and makes no profit; plaintiff has contributed to persons needing aid regardless of whether the recipients were members of plaintiff Lodge, and has awarded scholarship funds to young people.

Affidavit of the Grand Secretary, attached to the motion, included a copy of the Grand Lodge Constitution. According to the Constitution the definition and purpose of the Most Worshipful Prince Hall Lodge, Free and accepted Masons, is to be " * * * a charitable institution that extends its charity or relief to worthy persons and its own members in accord with its own fixed adopted laws, rules and Ancient customs."

Also attached to the above affidavit was a statement of receipts and disbursements for the tax years involved.

Defendant, based on all pleadings, orders, motions, depositions, documents of record and exhibits, moved for summary judgment.

The motion was accompanied by necessary tax records to prove validity of its claim.

Defendant filed and presented to the court the deposition of Bobby G. Webber, Grand Secretary of the plaintiff. He testified: Lodge income is derived from membership dues and degrees; amounts recived and disbursed were given in detail for each year, (this "accounting" will be summarized later). In answer to the question, who pays this money that is called relief dues for the Masonic Year?, he answered: The members of the Masonic Organization; that is the members of the Subordinate Lodges; members paid dues of fifteen dollars and forty cents per year to the Grand Lodge— all members must pay—$13.00 of above amount goes into the relief fund—all above is paid to plaintiff, not Subordinate Lodges.

Beneficiaries are entitled to death benefits because of a deceased member's payment of dues to plaintiff. The Grand Lodge decides once each year how much in death benefits is to be paid, and in fact have

paid death benefits for all the years involved; a part of the basic concept of plaintiff organization is to make death benefit payments every year.

The computation is made by determining the total amount of money available for benefits in the benefit fund and dividing the total by the number of members who have died during the year; the money (in benefit fund) comes from members who pay dues; at the time of a member's death the sum of $200 is made immediately to his beneficiary for funeral expenses; if a member has not kept up his dues his beneficiary is not entitled to benefits; each year a member in good standing is issued a membership card, good for one year; his beneficiary is entitled to benefits only if the deceased had a paid-up membership card; at the annual Communications each beneficiary is treated alike, that is, they all receive the same amount.

The Constitution under which plaintiff operates provides that members pay Relief Dues in the amount of $12.50 per year (later increased). A further provision declares that any Master Mason who does not pay his Grand Lodge Relief Dues on May 15th is automatically dropped from the roll of the Subordinate Lodge and Grand Lodge, and in the event of his death, his Constitutional beneficiary shall not be entitled to relief benefits from the Grand Lodge.

The Constitution fixes the "Charity Fund" assessment per member at twenty-five cents per year.

According to the Lodge Constitution a beneficiary is not entitled to the $200.00 immediately, or funeral expense unless the member's dues are paid up, or his beneficiary pays the second installment of dues provided the member died before the second installment of dues was payable.

It is made clear in the Lodge Constitution that only beneficiaries of paid-up Master Masons are entitled to benefits from plaintiff.

Exhibit "E" prepared by the Grand Secretary of plaintiff shows for the Masonic year 1966–67:

Total receipts from all sources – $431,940.94

Total disbursements – $417,373.73

Charity payments – $2,055.00

Scholarship grants to students – $5,500.00

Total relief collected – $331,450.48

Total relief disbursed – $322,010.08

Scholarship contribution to United Negro College Fund – $500.00

Similar breakdown is shown for each of the years involved in this suit.

During the ten year period plaintiff collected from members dues for the Relief fund in the total amount of $3,689,431.99, and paid to beneficiaries $3,546,953.55.

In the same ten year period the charity payments amounted to the sum of $14,989.00.

Plaintiff's motion for summary judgment was denied. Defendant's motion was granted.

The judgment recited " * * * the Most Worshipful Prince Hall Grand Lodge, F. & A. M. of Texas is a fraternal organization which paid death benefits to the beneficiaries of its deceased members in each of the taxable years 1958 through 1966, inclusive, and is not an institution of purely public charity; * * * (and) is not exempt from ad valorem taxation * * *."

Keeping in mind that three and one-half million paid as "relief" was paid from the money collected from members as dues, we must conclude that plaintiff was not operating as a purely public charity, but on the other hand its principal business was collecting dues from members and paying benefits to the beneficiaries of deceased Master Masons who were in good standing at the time of death.

The benefits were not gifts of charity, but money owed to the beneficiaries because the deceased member had paid for said benefit during his lifetime.

In City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978 (1921), the Supreme Court held, "* * * the Legislature might reasonably conclude that an institution was one of 'purely public charity' where: First, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalties, by preventing them, through absolute gratuity, from becoming burdens to society and to the state."

The court held the Association met the requirements of a purely public charity, but was not entitled to tax exemption because other bodies, whose activities included other fields than charity, used the building for their regular meetings.

Immediately following the above case the Court of Civil Appeals in Concho Camp, No. 66, W. O. W. v. City of San Angelo, 231 S.W. 1106 (Tex.Civ.App., 1921, no writ hist.), denied exemption to a fraternal order because the building was used in part by others. The court, however, added the following significant holding, "We also hold that in this case appellant is not entitled to the exemption, because of the fact that it issues insurance policies to its members; and therefore it is not an institution purely for public charity."

Attention is hereby called to an extensive opinion by the then Attorney General of Texas (later Chief Justice of the Supreme Court) which was incorporated in the Court of Civil Appeals opinion. In an exhaustive study of the cases, statutes and constitution, Mr. Cureton agreed with the opinion that " ' "Where the principal object of a fraternal order is to provide for the payment of sick benefits to members and special payment to the next of kin or designated beneficiaries of deceased members out of funds raised by dues and assessments,

it is not a charitable organization, but in the nature of an insurance company, and its property is not exempt." ' "

In Dickison v. Woodmen of the World Life Ins. Soc., 280 S.W.2d 315 (Tex.Civ. App., 1955, writ ref.), it was held, "The question is then narrowed to the inquiry of whether or not an association or society which is authorized to issue benefit certificates in the nature of life insurance on a contractual basis and apply its assets acquired from assessments or any other source to the payment of such certificates, can reasonably be classified as an institution for the accomplishment of 'ends wholly benevolent' * * *. Under the Texas decisions, * * * it must be held that such ends are not wholly benevolent and such an organization as here involved is not an institution of 'purely public charity' within the constitutional definition."

The court held further, on authority of Farmer v. State, 69 Tex. 561, 7 S.W. 220 (Tex.Sup.,1888), that a benefit certificate similar to a life insurance policy issued upon a contractual consideration, was "a contract of insurance, no matter by what name it may be called."

■ While plaintiff did not issue "policies", it did issue membership cards to its paid-up members, and under its Constitutional provisions if a Master Mason failed to pay his Relief dues on or before a specified date and receive a membership card for the Lodge year, his Constitutional beneficiary would not be entitled to relief benefits from the Grand Lodge.

Under the law as set out in Farmer v. State, supra, and Dickison v. Woodmen of the World, supra, we hold that the arrangement between plaintiff and its members was "a contract of insurance, no matter by what name it may be called."

■ The latest Supreme Court decision on purely public charities we have found was handed down in March of this year, Hilltop Village, Inc. v. Kerrville Ind. Sch.

Dist., 426 S.W.2d 943, wherein the court reaffirmed its former holdings that an organization is not an institution of purely public charity within the meaning of the constitutional exemption unless it assumes, to a material extent, that which might otherwise become the obligation or duty of the community or the state, and unless its funds, property and assets are pledged and used to provide for the basic needs of the sick, distressed and needy, whether the benefits be extended only to a small segment of society or to the public generally.

We do not find in the record that any of the funds, property and assets are pledged and used as prescribed by the above case. On the other hand it is conclusively shown that the benefits are paid out of dues received. No fixed amount is paid the beneficiary. The amount is determined by the amount of money in the benefit fund (consisting of benefits dues paid by member) divided by the number of members in good standing who have died during the Lodge year.

■ It is a well established rule in Texas that provisions of law purporting to grant exemptions from taxation will be given a strict and narrow construction and exempted status will not be extended to property unless the controlling law clearly shows such was intended. City of Houston v. South Park Baptist Church, 393 S.W. 2d 354 (Tex.Civ.App., 1965, writ ref.).

■ It has been emphasized that benefits paid, came out of the fund maintained by the relief dues made by paying members of the Lodge. "If it be benevolent to pay one money under such circumstances, then every mutual life insurance company is acting in a benevolent manner towards the family of an insured member when it pays the policy it had issued thereon for a moneyed consideration. It matters not what name the association may assume. The law looks to the real objects of the body, and not to the name indicative of benevolence which it may have assumed." Farmer v. State, supra; State ex rel. Attorney General v. Farmers', Etc., Ins. Co., 18 Neb. 276, 25 N.W. 81 (Neb.Sup., 1885).

■ In our opinion it was conclusively proved in the trial court that plaintiff's principal business is conducting a benevolent service similar in nature to a mutual life insurance company.

It is a fraternal benefit society paying relief benefits to beneficiaries of deceased members who, while living, were in good standing; that is, they were owners of current paid-up membership cards.

The benefits received by the beneficiaries were benefits paid for by the member while a living paid-up member. Under plaintiff's Constitution the beneficiary was entitled to the benefits paid. Such payments as made by plaintiff were neither benevolence nor charity.

It is not charity for a person to receive and accept that which is his. It is not a benevolent act for the payor to pay to the recipient that which he owes to the recipient.

Plaintiff was not entitled to judgment because it failed to prove it was, under the Constitution of the State, the Legislative acts and the decisions of the courts, a purely public charity entitled to tax exemption.

On the other hand defendant proved conclusively by plaintiff's own Constitution, financial records and deposition testimony that plaintiff does not qualify as a purely public charity entitled to exemption, but is in fact a fraternal organization and benefit society whose principal activity is receiving dues and paying benefits to beneficiaries of deceased members who were "paid-up" members at time of death.

It therefore does not qualify as a purely public charity and the trial court did not err in rendering summary judgment for the City and the School District.

Affirmed.