

# The Attorney General of Texas

December 31, 1982

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas   77002

Opinion No. MW-553

Re:   Tax exemption of property
used for religious purposes

Dear Mr. Driscoll:

You ask two questions concerning ad valorem tax exemption of property used for religious purposes. Your first question is:

> Is it the duty of the county tax assessor-collector to collect delinquent taxes on land owned in fee by a church with a reversionary interest in the grantor who has not claimed an exemption when said property is claimed to be exempt from taxation because it is used as a home for a needy family and said property yields rent revenue to said church?

The threshold question is whether property owned by this church can be exempt from ad valorem taxation when it is used as a home for a needy family and the property yields rent revenue to the church. Our answer is limited to the particular circumstances considered. We conclude that the property here is not tax exempt because it fails to qualify either as exempt property of a religious organization or as property of a charitable organization exempt under present statutes. Therefore, it is the duty of the county tax assessor-collector to collect delinquent ad valorem taxes on the property.

Article VIII, section 2 of the Texas Constitution provides the following in pertinent part:

> [T]he legislature may, by general laws, exempt from taxation... actual places of religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place of the ministry of such church or religious society, and which yields no revenue whatever to such church or religious society; provided that such exemption shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre

> of land; ... and institutions of purely public
> charity; and all laws exempting property from
> taxation other than the property mentioned in this
> Section shall be null and void.

The foregoing constitutional provision is not self-executing; it permits (but does not require) the legislature to exempt certain types of property from taxation. Pursuant to this authority, the legislature enacted section 11.20, Property Tax Code, exempting certain specified property of religious organizations, and section 11.18, Property Tax Code, exempting certain specified property of organizations meeting listed criteria which qualify them as "charitable organizations".

In order to qualify for exemption from ad valorem taxation, property must fall within either a self-executing constitutional provision or a statute adopted pursuant to article VIII, section 2 of the Texas Constitution. See River Oaks Garden Club v. City of Houston, 370 S.W.2d 851 (Tex. 1963). Moreover, though property falls within a purported statutory exemption, it will be exempt only if such an exemption is permitted by the constitution. Dickison v. Woodmen of the World Life Insurance Society, 280 S.W.2d 315, 317 (Tex. Civ. App. - San Antonio 1955, err. ref'd); Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926, 931 (Tex. 1924). In this instance, we need not reach the constitutional issue because the subject property falls within the ambit of neither section 11.18 nor section 11.20 of the Property Tax Code. We will first address whether the property is exempt under section 11.20, which pertains to religious organizations.

Section 11.20 declares the following in pertinent part:

> (a) An organization that qualifies as a
> religious organization as provided by Subsection
> (c) of this section is entitled to an exemption
> from taxation of:

> (1)   the real property that is owned by
> the religious organization, is used primarily
> as a place of regular religious worship, and is
> reasonably necessary for engaging in religious
> worship;

> (2)   the tangible personal property that
> is owned by the religious organization and is
> reasonably necessary for engaging in worship at
> the place of worship specified in Subdivision
> (1) of this subsection;

> (3)   the real property that is owned by
> the religious organization and is reasonably

necessary for use as a residence (but not more than one acre of land for each residence) if the property:

      (A) is used exclusively as a residence for those individuals whose principal occupation is to serve in the clergy of the religious organization; and

      (B) produces no revenue for the religious organization; and

    (4) the tangible personal property that is owned by the religious organization and is reasonably necessary for use of the residence specified by Subdivision (3) of this subsection.

. . . .

(d) Use of property that qualifies for the exemption prescribed by Subdivision (1) or (2) of Subsection (a) of this section for occasional secular purposes other than religious worship does not result in loss of the exemption if the primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship.

(e) For the purposes of this section, 'religious worship' means individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith.

Section 11.20 exempts real and tangible personal property if it is owned by a religious organization, used primarily as, or at, a place of regular religious worship, and is reasonably necessary for engaging in religious worship. In construing article VIII, section 2 and the now repealed article 7150, V.T.C.S., (the predecessor statute to section 11.20) the Texas Supreme Court declared that "[w]hat constitutes an actual place of religious worship as those words are used in the Constitution and statutes is a fact issue which the claimant has the burden to prove." Davies v. Meyer, 541 S.W.2d 827, 829 (Tex. 1976). We do not resolve issues of fact in the opinion process, but we note that there is no allegation in the materials submitted to us that the subject property is used as an actual place of religious worship. Assuming this to be the case, it is clear that

the subject property does not fall within section 11.20(a)(1) and (2); therefore, we need not consider by whom property subject to a reversionary interest is "owned" within the meaning of the statute. We turn to the second exemption permitted for religious organizations.

Section 11.20(a)(3) exempts only real property owned by the religious organization and reasonably necessary for use as a residence. This exemption applies only if the property is used exclusively as a residence for the clergy and produces no revenue for the religious organization. Again, assuming the truth of the facts presented to us, the subject property is not used exclusively as a residence for the clergy and does produce revenue for the religious organizations. Thus, the property is not exempt under section 11.20(a)(3). (Such restrictions apply only to the religious organization's parsonage. Property Tax Code §11.20(a)(3)(A) and (B). We note that neither the statute, section 11.20(a) and (b), Property Tax Code, nor the constitution, require that the actual place of religious worship be exclusively so used or that it produce no revenue. Davis v. Congregation Agudas Achim, 456 S.W.2d 459, 461 (Tex. Civ. App. - San Antonio 1970, no writ).)

Under the facts given us, clearly, the subject property is not exempt under any of the provisions of section 11.20 exempting property belonging to a religious organization.

Section 11.18 of the Property Tax Code concerns exemptions for charitable organizations. It provides the following in pertinent part:

(a) An organization that qualifies as a charitable organization as provided by Subsection (c) of this section is entitled to an exemption from taxation of the buildings and tangible personal property that:

(1) are owned by the charitable organization; and

(2) except as permitted by Subsection (b) of this section, are used exclusively by qualified charitable organizations.

(b) Use of exempt property by persons who are not charitable organizations qualified as provided by Subsection (c) of this section does not result in the loss of an exemption authorized by this section if the use is incidental to use by qualified charitable organizations and limited to activities that benefit the beneficiaries of the

charitable organizations that own or use the property.

(c) To qualify as a charitable organization for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:

(1) be organized exclusively to perform religious, charitable, scientific, literary, or educational purposes and, except as permitted by Subsection (d) of this section, engage exclusively in performing one or more of the following charitable functions:

(A) providing medical care without regard to the beneficiaries' ability to pay;

(B) providing support or relief to orphans, delinquent, dependent, or handicapped children in need of residential care, abused or battered spouses or children in need of temporary shelter, the impoverished, or victims of natural disaster without regard to the beneficiaries' ability to pay;

(C) providing support to elderly persons or the handicapped without regard to the beneficiaries' ability to pay;

(D) preserving a historical landmark or site;

(E) promoting or operating a museum, zoo, library, theater of the dramatic arts, or symphony orchestra or choir;

(F) promoting or providing humane treatment of animals;

(G) acquiring, storing, transporting, selling, or distributing water for public use;

(H) answering fire alarms and extinguishing fires with no compensation or only nominal compensation to the members of the organization;

(I) promoting the athletic development of boys or girls under the age of 18 years;

(J) preserving or conserving wildlife;

(K) promoting educational development through loans or scholarships to students;

(L) providing halfway house services pursuant to a certification as a halfway house by the Board of Pardons and Paroles; or

(M) providing permanent housing and related social, health care, and educational facilities for persons who are 62 years of age or older without regard to the residents' ability to pay;

(2) be operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain and, if the organization performs one or more of the charitable functions specified by Paragraph (C), (D), (E), (F), (G), (J), (K), or (M) of Subdivision (1) of this subsection, be organized as a nonprofit corporation as defined by the Texas Non-Profit Corporation Act; and

(3) by charter, bylaw, or other regulation adopted by the organization to govern its affairs:

(A) pledge its assets for use in performing the organization's charitable functions; and

(B) direct that on discontinuance of the organization by dissolution or otherwise the assets are to be transferred to this state or to an educational, religious, charitable, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended.

(d) Performance of noncharitable functions by a charitable organization that owns or uses exempt property does not result in loss of an exemption authorized by this section if those other functions are incidental to the organizations's charitable functions.

(e) In this section, 'building' includes the land that is reasonably necessary for use of, access to, and ornamentation of the building.

(f) An exemption authorized by Paragraph (J) of Subdivision (1) of Subsection (c) of this section is limited to land and improvements and may not exceed 1,000 acres in any one county.

Based on the information which we have received, we conclude that the subject matter is not exempt as a charitable institution from ad valorem taxes for two reasons. First, we have been presented with no charter or bylaw indicating that the church is "organized exclusively to perform religious... purposes and... engage exclusively in performing one or more of [a list of thirteen specified] charitable functions." (Emphasis added). Section 11.18(c)(1)(A)-(M), Property Tax Code. Indeed, no charter or bylaws may exist at all. As we noted in Attorney General Opinion MW-288 (1980), section 11.18 "establishes new criteria for determining whether property owners are eligible for charitable tax exemptions."

In our opinion, the definition of 'charitable functions' in section 11.18(c)(1) clearly serves not to enlarge the meaning of 'purely public charity' but to deny tax exemptions to property owned by institutions of purely public charity that are not organized to perform the charitable functions defined. Where section 11.18 has the effect of denying tax exemptions to organizations

> that might otherwise have been properly allowed
> them, it will be enforced.   (Emphasis added).

Id.  The organization which owns the subject property is apparently a religious organization organized, however informally, for primarily religious purposes.   It is not a charitable organization incidently engaging in religious activities.   While the organization is organized to perform religious purposes, it does not in addition engage "exclusively" (or even primarily) in one or more of the enumerated charitable purposes set out in the statute.   The fact that a claimant performs some charitable activity has not been sufficient to qualify the organization for tax exemption as a charitable organization.   City of Amarillo v. Amarillo Lodge No. 731, A.F. & A.M., 488 S.W.2d 69, 72 (Tex. 1972).   In order to determine whether an organization qualifies, one must look to the principal activity of the claimant.   See Most Worshipful Prince Hall Grand Lodge, F. & A.M. of Texas v. City of Fort Worth, 435 S.W.2d 274 (Tex. Civ. App. - Fort Worth 1968, writ ref'd n.r.e.).   The principal activity of the church is religious, not charitable.   The organization does not meet the requirements of section 11.18(c)(1)(A)-(M), Property Tax Code.

We are not unmindful of the holding in City of McAllen v. Evangelical Lutheran Good Samaritan Society, 530 S.W.2d 806 (Tex. 1975), wherein the supreme court, in construing article VIII, section 2 of the Texas Constitution together with the now repealed article 7150, V.T.C.S. (the predecessor to section 11.18, Property Tax Code) stated that although charitable institutions are entitled to an exemption of only that property which is used by the institution exclusively for the purposes of a purely public charity, it does not follow:

> that every use of the property must be gratuitous.... Nor does it follow that all religious or other benevolent activities must be excluded in the operations of the hospital or home.   It is no fatal defect to join charitable and religious purposes; the exemption will not be withdrawn so long as the charitable requirements are met.

530 S.W.2d at 810-11.   As we declared in Attorney General Opinion MW-288 (1980), "[t]he key is the emphasized language 'so long as the charitable requirements are met.'   Former article 7150, section 7, V.T.C.S., did not require that the institution claiming an exemption be organized exclusively for certain charitable purposes and no other.   The present statute does."   (Emphasis added).   As we stated above, the claimant organization is not so organized.

Second, section 11.18(c)(3) requires that the charter, bylaws, or regulations adopted by the organization to govern its affairs:

> (A) pledge its assets for use <u>in performing the</u>
> <u>organization's charitable functions</u>;  and  (B)
> direct that on discontinuance of the organization
> by dissolution or otherwise the assets are to be
> transferred to this state or to an educational,
> religious, charitable, or other similar organiza-
> tion that is qualified under Section 501(c)(3),
> Internal  Revenue  Code  of  1954,  as  amended.
> (Emphasis added).

The organization's governing document makes no such provision.  Again,
under the facts submitted, the organization fails to satisfy the
"charitable" requirements of section 11.18; the property is therefore
taxable in the absence of another applicable exemption.  See <u>City of</u>
<u>McAllen v. Evangelical Lutheran Good Samaritan Society</u>, <u>supra</u>; <u>Hilltop</u>
<u>Village v. Kerrville Independent School District</u>, 426 S.W.2d 943 (Tex.
1968); <u>City of Waco v. Texas Retired Teacher Residence Corporation</u>,
464 S.W.2d 346 (Tex. 1971).  Because we are aware of no other
applicable exemption, we advise in answer to your first question that
it is clearly the duty of a county tax assessor-collector to collect
delinquent taxes on property not exempt from ad valorem taxes.

Your second question is:

> Is it the duty of the County Tax Assessor-
> Collector to collect delinquent taxes on land
> presently owned in fee by a church with
> reversionary interest in the grantor if the taxes
> were imposed on a non-exempt owner for tax years
> prior to the donation of the building to the
> church?

From your question, we understand the following to be the case.
Ad valorem taxes were assessed against the property while it was owned
in fee simple absolute by a person who later conveyed the property,
subject to a reverter clause, to the church.  The taxes were not paid
and are presently delinquent.  We understand you to be asking upon
whom the liability for the delinquent ad valorem taxes should rest,
the present or former owner.  We conclude that the grantor, who, we
understand, was the owner of the property when the delinquent taxes
were imposed, is personally liable.

Section 32.07, Property Tax Code, provides in pertinent part:

> (a)  Except as provided by Subsection (b) of this
> section,  property  taxes  are  the  personal
> obligation of the person who owns or acquires the
> property on January 1 of the year <u>for which the</u>
> <u>tax is imposed</u>.  A person is not relieved of the

obligation because he no longer owns the property. (Emphasis added).

We therefore conclude that the person who owned the property on January 1 of the year for which the unpaid tax was imposed is personably liable for the tax. Of course, the taxable interest in the property is itself subject to sale for the satisfaction of unpaid taxes validly assessed against it, whoever might have been its owner when the taxes accrued. Tax Code §32.01. See Attorney General Opinion H-1108 (1977). But see Tax Code §33.06 (Residence homesteads of aged -- deferred collection).

## S U M M A R Y

It is the duty of the county tax assessor-collector to collect delinquent taxes on church-owned property in the fact situation presented. The person who owned the property on January 1 of the year for which the unpaid tax was imposed is personally liable for the delinquent ad valorem taxes, but the taxable interest in the proprety is subject to sale for the satisfaction of unpaid taxes validly assessed, whoever might be personally liable for the taxes.

Very truly yours,

M A R K     W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Bob Lattimore
Jim Moellinger