American Society for Testing and Materials *v.* Board of Revision of Taxes, Appellant.

Argued December 1, 1966. Before BELL, C. J., MUS-MANNO, EAGEN, O'BRIEN and ROBERTS, JJ.

*Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, with him *Jerome R. Richter* and *Augustus R. Sigismondi,* Assistant City Solicitors, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellant.

*Morris R. Brooke* and *Lewis H. Van Dusen, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 4, 1967:

In 1947 the American Society for Testing and Materials (ASTM) applied for and received from the Board of Revision of Taxes, Philadelphia County, tax exemption for its property located at 1916-18 Race Street, Philadelphia, the application stating that: "The property is . . . used exclusively for the following purpose: as the national headquarters of the Society housing its library and information service, committee and conference rooms, its editorial, publication and administrative offices, which constitute an institution of learning within the meaning of the Act of May 22, 1933, P. L. 853, Art. II, Sec. 204, as amended by Sec. 1 of the Act of May 3, 1943, P. L. 158."

This exemption remained in effect from 1947 through 1962. In the latter year the society demolished its existing building and constructed new and enlarged headquarters, this construction reaching completion in 1964. The board of revision of taxes then raised assessment on the property from $109,000 to $1,350,000, refused tax exemption, and declared that the exemption which had first been granted and had been in effect for 15 years, had been made in error. The society appealed to the court of common pleas, which, after extended hearings, reversed the board, ruling that the society was a public charity, that it advanced the public welfare and was therefore entitled to the tax exemption prayed for. After exceptions filed by the City of Philadelphia, the court en banc affirmed the original decision and the city appealed.

The city contends that the society is not entitled to exemption from municipal taxation as a public charity, alleging: (1) its principal beneficiaries are its own members; (2) its membership is not open to the public but depends wholly on the discretion of the society's directors; (3) the society maintains no direct contact with the public except through a library not of general interest and little used by the public.

The appeal poses the question as to whether §204 of The General County Assessment Law, passed pursuant to the Pennsylvania Constitution* is here applicable. That section provides, inter alia, that the following property is tax exempt: "(c) All . . . associations and institutions of learning, benevolence, or charity . . . with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same."

---

* Article IX, §1, of the Constitution authorized the General Assembly to exempt from taxation: ". . . public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity . . ."

The facts in the case are not in dispute since the parties have filed a "Stipulation of Facts based on Evidence Presented at Hearing," the stipulation containing a resume of the uncontradicted evidence presented in the court below. That evidence definitively established that the purpose of the society is "promotion of knowledge of the materials of engineering and the standardization of specifications and methods of testing." This purpose is carried out by the society's technical committees (more than 2,000 in number), each having a specific area of scientific interest in the field of materials. These committees and their subcommittees meet regularly, review past research and developments, conduct special research projects, give lectures and prepare papers, conduct tests and develop methods of testing materials such as steel, iron, rubber, asphalt, plastic, concrete, etc., within their area of scientific concern. The society, through these committees, develops "standards" of performance which it believes the products should meet in order to provide adequate service for those who use them.

The forces of industry, education and governmental agencies throughout the nation supply from 1300 to 1500 of its leading scientists to the society, most of whom are college graduates, many of them holding doctor's degrees. The Federal government contributes the services of a large number of its scientists and engineers to the society. Practically every one of the 155 accredited engineering colleges and universities take part in the society's activities. The ASTM publishes numerous works containing results of its tests, studies and research. About 700 of the 1700 students engaging in the society's work receive free membership and the society's publications without charge. The society participates in the program of scientific exchange and the rendering of technical assistance to undeveloped countries under the direction of the United States Depart-

ment of State. It helps to train foreign personnel for UNESCO and other standardization projects overseas.

Among the objective achievements of the society's works may be enumerated: Safer buildings, better roads, improved surgical implants, more advanced missiles; New scientific discoveries and developments resulting from advanced research; Better education for science and engineering students; Free library, free lectures and free knowledge for all people; Critical and necessary work for federal, state, municipal and foreign governments; Savings to federal, municipal and other taxpayers.

It must be apparent from even this meager summarization of the society's spheres of activity that it is more than a "business pool" as urged by the City. Dr. Allen V. Astin, Director of the National Bureau of Standards (an arm of the U. S. Government), speaking of the public benefits derivable from the society's work, said: "The general public benefits through having an efficient economy. And our present technological way of life, which has raised for all of us our standard of living to unprecedent heights, is based to a significant extent on having available standard methods, reliable methods, of evaluating the characteristics and performance of material. Now, this is the main product, and from this all of us benefit. And, of course, the other participants in this economy, like the producers, and the big technological consumers, also benefit. But from all of these the public is the major benefactor."

Dr. Astin testified further: "Q. Could the Federal Government carry on the work of ASTM? Could the National Bureau of Standards carry it on? A. Not without a tremendous increase in budget, and not without an extensive intrusion by the Federal Government into an area which should be done by an organization, a private association, working in the public interest, such as ASTM is. Q. If the Federal Government did

increase its capacity and its facilities in order to carry on ASTM's work, who would pay for that? A. The public."

It thus must be apparent that the American Society for Testing and Materials functions in the nature of a public charity. We said in *Hill School Tax Exemption Case,* 370 Pa. 21, 25: " ' "The word 'charitable,' in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public.' " ' "

In that case we quote with approval from *Episcopal Academy v. Philadelphia,* 150 Pa. 565: ". . . whatever is gratuitously done or given in relief of the public burdens or for the advancement of the public good is a public charity. In every such case as the public is the beneficiary, the charity is a public charity."

The city, in pressing its non-tax-exemption argument against ASTM, bears heavily on the adverb "purely" in Art. IX, §1 of the Constitution. But the phrase "purely public charity" was not intended to apply only to the Samaritanism of distributing bread and pouring milk into jugs held in the extended hands of the poor. We said recently in the case of *Pittsburgh Bible Institute v. Board of Property Assessment,* 405 Pa. 297, that: " 'The word "purely" as used in the Constitution in the phrase "purely public charity" means that the institution must be entirely free from private profit motive.' "

The record establishes unequivocally that the ASTM is not operated for profit. Although its members donate to the organization, those donations do not even pay for the publications gotten out by the society. For instance, the 32-volume Book of Standards, represent-

ing a billion and a half dollars of scientific time and research and which can be purchased by anyone, whether a member of the society or not, is sold for less than it costs the society to print it. All lectures, paper discussions, seminars and symposia of the society are open to the public without charge. In 1964 the society's operations resulted in a net loss to the society of $180,000, in 1965 the net loss was estimated at $110,000.

The record does not bear out the city's contention that industry is the prime beneficiary of the society's activities. Whatever gain accrues to industry through ASTM eventually accrues to the benefit of the public as well. In his opinion reversing the decision of the board of revision of taxes, Judge GRIFFITHS well said: "With all the governmental participation on national, state or local levels and acceptance of its standards by government, it can hardly be gainsaid that the activities and function of the applicant (ASTM) lessens the burdens of government. Here, the public good is advanced, the public is the beneficiary and the charity is, therefore, a public charity, entitled to the exemption for which it prays."

Order affirmed.

Mr. Justice JONES and Mr. Justice COHEN took no part in the consideration or decision of this case.