**AMARILLO LODGE NO. 731, A. F. & A. M., et al., Appellants,**

**v.**

**CITY OF AMARILLO et al., Appellees.**

**No. 8168.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 8, 1971.

Rehearing Denied Dec. 6, 1971.

Folley, Snodgrass & Calhoun (Roy C. Snodgrass, Jr.), Amarillo, for appellants.

J. Bruce Aycock, City Atty. (John H. Mallard), Amarillo, for appellees.

ELLIS, Chief Justice.

This is an appeal from a judgment by the trial court ordering the payment of ad valorem taxes assessed and levied against certain property owned and used by four Masonic lodges in Amarillo, Texas, on the finding that such property is subject to taxation. Reversed and rendered.

The suit was filed by four taxing units, the City of Amarillo, Amarillo Independent School District, Amarillo College District, and Amarillo Hospital District, appellees herein, against Amarillo Lodge, No. 731, Ancient Free and Accepted Masonry, Amarillo Chapter No. 198, Royal Arch Masons, Amarillo Council No. 134, Royal and Select Masters, and Amarillo Commandery No. 48, Knights Templar, herein designated as Appellant Lodges, to collect delinquent ad valorem taxes assessed and levied against the appellants' property. The property in question consists of Lots 7, 8 and 9, Crowdus-Starkey Addition to the City of Amarillo, Potter County, Texas, including the lodge building situated thereon.

The Appellant Lodges deny liability for the taxes and assert that they qualify for exemption from such taxation as institutions of purely public charity within the purview of the legislative pronouncements in Sections 7 and 22 of Article 7150, Vernon's Annotated Texas Statutes, enacted pursuant to Section 2 of Article VIII of the Texas Constitution Vernon's Ann.St.

The case was tried to the court without a jury on a stipulation of facts. The trial court entered judgment denying appellants' claim for exemption and ordered the payment of taxes, interest, penalty and costs, from which judgment the appellants have duly perfected this appeal.

The appellants have predicated their appeal upon the contentions that the Stipulations and admitted facts established that Appellant Lodges are institutions of purely public charity and that they qualify under Sections 7 and 22 of Article 7150 for exemption from ad valorem taxation. Additionally, appellants contend that their use of the property involved for conducting lodge matters, initiations and ceremonials incident to the work and activities of the Masonic Orders does not defeat their claim for constitutional and statutory exemption from taxation.

The Stipulations of the parties shall be considered in the light of the pertinent constitutional and statutory provisions and the status of the case law dealing with claims for exemptions of the nature involved in this case. Among other matters, it was stipulated that each of the Appellant Lodges is a subordinate lodge of and chartered by the respective Grand Lodges of which they form a part, and the charters of all the Grand Lodges show that they were each incorporated under the laws of the State of Texas for charitable and benevolent purposes. Also, it was stipulated that the Appellant Lodges "are engaged in the work of the Masonic Order and in its nature is fraternal, educational and charitable in character." The Stipulations further set out that the property involved in this suit is jointly owned and maintained by the Appellant Lodges and used exclusively by them for conducting lodge meetings, initiations and ceremonies incident to the work of the lodges and promoting good fellowship and brotherly love

among their members and adherents. Further, it was stipulated that the income of the lodges is derived solely from membership dues and initiation fees, and the lodges make no gain or profit. Also, a part of their income goes to their respective Grand Lodges, "none of which make any gain or profit but all of which Grand Lodges are dedicated to charitable, educational and Masonic work purposes." The Stipulations specifically reflect that the Appellant Lodges financially support the Grand Lodge in permanent and continuous projects of a charitable nature such as the Masonic Home and School for Orphaned Children of deceased Masons and to educate and maintain needy children and grandchildren of deceased Master Masons; the establishment of a home at Arlington, Texas, for the care of aged Masons and their wives and widows; providing funds for the support and maintenance of aged and disabled Masons and widows of deceased Masons in Texas; the provision of an assistance or charity fund for the relief of needy Masons and members of their family suffering from tuberculosis or any malignant or incurable disease; the financial support work of the Committee on Public Education charged with the duty of carrying on the Public School Program of the Grand Lodge and supporting various other activities having to do with the promotion and support of Public Education in Texas; providing funds to extend relief in case of public disaster caused by cyclones, earthquakes, floods or other catastrophies; establishment and support of the Knights Templar Eye Foundation treating indigent children and adults with eye trouble, whether or not such patients are from Masonic homes and irrespective of race or color; and the sponsorship and support of the Texas Scottish Rite Hospital For Crippled Children in Dallas, Texas, dedicated to the free treatment of needy and indigent crippled children, regardless of race, creed, color or religion. It was further stipulated that the dues of such lodges which are not contributed to their respective Grand Lodges are retained for the upkeep and maintenance of the local lodges, the lodge building and necessary expenses of operation, and the aid of sick and distressed members and their families. None of the lodges pay their members any type of insurance benefits, or engage in any political activity. None of the lodges provide recreational facilities or regular social activities. Occasionally dinners or meals are served in one or more of the Appellant Lodges to their members and guests, without charge being made therefor, with the respective lodges bearing such expenses. It was expressly stipulated that "All moneys acquired from initiations and dues not paid out for current expenses and on building obligations are devoted to charitable and educational purposes and never become the subject matter of gain or profit for private persons or private interests."

Under the provisions of Section 2 of Article VIII of the Texas Constitution, the Legislature may by general laws, exempt from taxation the property listed and described therein, including institutions of purely public charity. Pursuant to the constitutional limitation, the Texas Legislature has enacted various statutes exempting properties belonging to "institutions of purely public charity." The constitution does not define "institutions of purely public charity" and leaves it to the Legislature to define such term. In 1905, the Legislature, for the first time, sought to define an "institution of purely public charity" and enacted what is now a portion of Section 7 of Article 7150, V.A.T.S. (Acts 29th Leg. Ch. 27, pp. 314–315), which provides:

"* * * An institution of purely public charity under this act is one which dispenses aid to its members and others in sickness or distress, or at death, without regard to poverty or riches of the recipient, also when the funds, property and assets of such institutions are placed and bound by its laws to relieve, aid and administer in any way to the relief of its members when in want, sickness

and distress, and provide homes for its helpless and dependent members and to educate and maintain the orphans of its deceased members or other persons."

Section 7 exempts from taxation all buildings and personal property "belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions, including hospital parking facilities, not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions and for the benefit of the sick and disabled members and their families and the burial of the same, or for the maintenance of persons when unable to provide for themselves, whether such persons are members of such institutions or not."

■ It has been held that it is a question of fact as to whether a fraternal organization is a purely charitable institution so as to entitle its property to exemption from taxation. Benevolent & Protective Order of Elks, Lodge No. 151 v. City of Houston, 44 S.W.2d 488 (Tex.Civ.App. —Beaumont 1931, writ ref'd). In this instance, the meaning of an "institution of purely public charity," is primarily a matter of legislative determination which must be reasonable and not antagonistic to the purpose, intent and scope of the constitutional provision. In making the determination regarding the Appellant Lodges we are required to measure the Stipulations against the recognized Legislative standards to ascertain whether such Lodges are institutions of purely public charity within the contemplation of the constitutional provision. Under the above definition of "an institution of purely public charity," fraternal organizations operating within the prescribed limitations appear to be included along with hospitals, orphanages, homes for the indigent and other charitable organizations.

In the case of City of Houston v. Scottish Rite Benevolent Association, 111 Tex.

191, 230 S.W. 978 (1921), the Supreme Court of Texas set out the three cardinal tests by which the Legislature might reasonably conclude that an institution is one of "purely public charity," as follows:

"* * * first, it made no gain or profit; second, it accomplished ends wholly benevolent; and, third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state."

Also, in such case the following significant language was quoted from Widows' & Orphans' Home v. Commonwealth, 126 Ky. 386, 103 S.W. 354:

"The word 'purely' [was meant] to desscribe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity; but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect or fraternal order, or color or class, it was a private, and not a public, charity."

The City of Houston v. Scottish Rite Benevolent Association case involved the Scottish Rite Benevolent Association of Houston, Texas, which owned the Scottish Rite Cathedral in Houston, Texas, containing a lodge room for the members of the association. There was, however, no exclusive use of the building, since under the stipulations of the parties, the lodge room was also used by two other Masonic Lodges whose activities included fields other than charitable. The court decided the case on the basis of that particular stipulation. It made no independent evaluation to determine whether the activities were purely charitable but held that the property was not exempt since, *under the stipulation,* the use was not exclusive as an institution of public charity. In the case of Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519

(1887), the Texas Supreme Court rejected a lodge's claim for tax exemption on the grounds that certain portions of the lodge building were rented to persons and for purposes unconnected with the objects of the lodge, but the court did not reach the question of whether the lodge was an institution of public charity. Our courts have denied the exemption claimed in various cases because of the use of the particular lodge for uncharitable activities or by reason of nonexclusive use of the lodge. Examples of denials of asserted tax exemptions by lodges and fraternal benefit associations include: Masonic Temple Ass'n v. Amarillo Independent School Dist., 14 S.W.2d 128 (Tex.Civ.App. —Amarillo 1928, writ ref'd) wherein the controlling factor in denying the exemption was the lack of exclusive use by the owner and a stipulation that some of the work and activities of the lodges was only partly charitable; Benevolent & Protective Order of Elks Lodge No. 151 v. City of Houston, supra, wherein the exemption was denied because of use of the premises for activities of a commercial nature; Concho Camp No. 66, W.O.W. v. City of San Angelo, 231 S.W. 1106 (Tex.Civ.App.— Austin 1921, no writ) wherein a non-exclusive use by the lodge as well as the conduct of non-charitable activities precluded the tax exemption; Dickison v. Woodmen of World Life Insurance Society, 280 S.W.2d 315 (Tex.Civ.App.—San Antonio 1955, writ ref'd) where an attempt was made to enlarge the constitutional tax exemption without restrictions against engaging in the life insurance business; and Most Worshipful Prince Hall Grand Lodge, F. & A. M. of Texas v. City of Ft. Worth, 435 S.W.2d 274 (Tex.Civ. App.—Fort Worth 1968, writ ref'd n. r. e.) wherein the association's principal business was conducting a service similar to a mutual life insurance company constituting neither benevolence nor charity, such practice being condemned for tax exemption claims under all the authorities. Farmer v. State, 69 Tex. 561, 7 S.W. 220 (1888).

None of the above authorities are applicable to the activities of the Appellant Lodges or would exclude them from the exemption. During the entire 66 year period since 1905, no Texas appellate court has passed upon a situation in which the building sought to be exempted was used for lodge purposes only, with no part thereof leased out or used for private gain or purposes which were stipulated to be noncharitable. For the purpose of this case we must regard the Stipulations and exhibits (including the charters setting out the purposes of the Lodges) as controlling and assume that no facts exist outside the Stipulations which would affect the question to be determined. Under the Stipulations, we find that the Appellant Lodges meet all of the tests set out in the Scottish Rite case in that they make no gain or profit, they accomplish ends wholly benevolent and they benefit persons through absolute gratuity from becoming burdens to society and the state as evidenced by the material support to a substantial extent of homes and schools for orphans as well as hospitals and homes for indigents. Although appellees contend that the language in the *Scottish Rite* case setting out the standards for an institution of purely public charity is dictum, such pronouncement is in harmony with the holdings of other cases supporting this type of exemption. See Santa Rosa Infirmary v. City of San Antonio, 259 S.W. 926 (Tex. Com.App.1924) and City of Palestine v. Missouri-Pacific Lines Hospital Association, 99 S.W.2d 311 (Tex.Civ.App.—Amarillo 1936, writ ref'd).

Subsequent Legislatures have enlarged the above mentioned 1905 definition of the term "institutions of purely public charity" by certain amendments to Section 7. Further, the Legislature has added other sections to Article 7150, and in 1967, it enacted Section 22 of Article 7150, which reads as follows:

"The property of all fraternal organizations shall be exempt from taxation

for so long as the property is owned and used for charitable, benevolent, religious, and educational purposes, and is not in whole or in part leased out to others, or otherwise used with a view to profit.

"The term 'Fraternal Organization' as used in this Act shall mean, 'A lodge, or lodges, engaged in charitable, benevolent, religious, and educational work.'

"However, this Act shall not apply to any fraternal organization or lodge which pays to its members, either directly or indirectly, any type of insurance benefit, be it life, health, accident or death benefit, or any other type of insurance; neither shall any organization which shall directly or indirectly participate or engage in any political activity, either in support of or in opposition to any candidate seeking any public office, have or be entitled to benefits as provided under this Act."

In the recent case of San Antonio Conservation Society, Inc. v. City of San Antonio, 455 S.W.2d 743 (Tex.Sup.1970), the Texas Supreme Court in a unanimous opinion, speaking through Justice Pope, clearly stated that under Section 7, Article 7150, charity had been defined primarily in the sense of almsgiving as demonstrated by the court's construction of such Section in City of Houston v. Scottish Rite Benevolent Association, supra; Santa Rose Infirmary v. City of San Antonio, supra, and in Hilltop Village, Inc. v. Kerrville Independent School District, 426 S.W.2d 943 (Tex.Sup. 1968). The three above mentioned cases discussed in San Antonio Conservation Society, Inc. v. City of San Antonio, involved claims that the institutions in question provided relief to the needy, the sick and the distressed and rules were set out which an institution must meet to qualify for the almsgiving type of charity. Primarily, it had been recognized that in providing this type of assistance, the institution relieved the government of burdens it would otherwise be obligated to bear.

In the case of River Oaks Garden Club v. City of Houston, 370 S.W.2d 851 (Tex.Sup. 1963), exemption was sought under a Section *other than Section 7* of Article 7150 (Section 20 dealing with Garden Clubs). The Texas Supreme Court (in a 5–4 decision) denied the exemption, *not because the benefits under the other Sections authorized charities different from the almsgiving type defined in Section 7, or because Section 7 was the exclusive basis for the claim that an institution was one of public charity,* but because the benefits of the Garden Club seeking the exemption were no more than benefits "to its society" and that its main activity was "to educate and enlighten its members, and such other persons as may care to attend its meetings or read its book." In connection with this matter, the court, although it denied the claim for exemption under the specific fact situation, gave full recognition to the rule announced in the *Scottish Rite* case:

" * * * Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state."

The above mentioned 1970 case of San Antonio Conservation Society, Inc., v. City of San Antonio (decided by the Supreme Court subsequent to the enactment of Section 22) held that the 1905 Legislature by the enactment of legislation substantially the same as the present Section 7 of Article 7150 did not bind subsequent legislatures from adding to or changing the existing law, and that the Legislature by its later enactment of Section 20 (involved in the 1970 case) intended to add to or change the existing law so as to exempt historical buildings and sites. In that case the Supreme Court held that the exemption of historical buildings and sites was a purely public charity within the meaning of the constitutional use of the term, and thereby extended the exemption considerably beyond the scope of the alleviation of phys-

ical need and almsgiving. After reviewing various enactments and considering the public interest and concern of the government of the State of Texas in preserving historical buildings and sites, the court considered the particular historical building and site in question and determined that the Society seeking the tax exemption had assumed to a material extent, that which otherwise might become the obligation or duty of the community or state and that the particular historical building and site in question met the statutory and constitutional test for tax exemption.

■ An examination of the provisions of Section 22 leads to the conclusion that the Legislature obviously intended to clarify the status of fraternal organizations, including lodges, in the light of court decisions dealing with property tax exemptions and to prescribe the requirements to be met before the property of a fraternal organization is tax exempt by virtue of being used exclusively and owned by an "institution of purely public charity" within the purview of Section 2 of Article VIII of the Texas Constitution. While certain charitable and benevolent institutions might qualify for the tax exemption as "institutions of purely public charity" under Section 7 of Article 7150, other organizations, including certain lodges, had been denied the exemption in the sense of pure almsgiving under Section 7.

It has been established that the Legislature is empowered to define specific institutions that are within the purview of the general language of the constitution. Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033 (1934); Goodnight v. City of Wellington, 118 Tex. 207, 13 S.W.2d 353 (1929); Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699 (1959). Since the meaning of the term "institution of public charity" is a matter which the constitution left to the Legislature to define, it did so by the enactment of Section 22 of Article 7150. Thus, the Legislature factually and reasonably declared that fraternal organizations (including lodges) meeting the prescribed qualifications are "institutions of public charity."

■ It is here noted that in Opinion No. M–240, dated June 4, 1968, the Attorney General of Texas held that Section 22, of Article 7150, V.A.T.S. is constitutional, subject, however, to the restrictive provisions of Article VIII, Section 2 of the Constitution of Texas. The opinion points out that the application of the statute to the particular facts presented will determine in each case whether the property is exempt. The opinion further holds that the property must be owned and used wholly and completely for one or more of the constitutionally exempt purposes. It is recognized that Attorney General's opinions are not binding on the courts but are persuasive and entitled to consideration. Bass v. Aransas County Independent School District, 389 S.W.2d 165 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.); Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130 (1931). Under the holding of such opinion, as applied to the Stipulations in this case, the claim for exemption of the property in question must be grounded upon its alleged use for charitable and benevolent purposes which might be construed to be synonymous with "purely public charity" under Section 2 of Article VIII of the Texas Constitution. City of Houston v. Scottish Rite Benevolent Ass'n, supra; River Oaks Garden Club v. City of Houston, supra. Any educational and religious activities claimed by the Lodges as related to the claim for exemption have application only in the sense and to the extent that they may be incidental to or serve to enhance the Lodges' charitable and benevolent purposes and objectives. See St. Edwards' College v. Morris, 82 Tex. 1, 17 S.W. 512 (1891); Radio Bible Hour, Inc. v. Hurst-Euless Independent School District, 341 S.W.2d 467 (Tex.Civ.App.—Fort Worth 1960, writ ref'd).

It is recognized that Section 22 of Article 7150, specifically dealing with the activities of fraternal organizations, has not

been previously construed by the appellate courts of Texas.[1] Numerous cases of this character involving the Masonic Order have been before the courts of various other states where constitutional and statutory provisions in this regard are similar to those in Texas. Tax exemption has been uniformly denied where a portion of the building sought to be exempted was leased for commercial purposes. In Re Burroughs' Estate, 357 Mo. 10, 206 S.W.2d 340 (1947). Various cases have been reviewed wherein the building sought to be exempted was used for lodge purposes only and no part thereof leased for commercial purposes and where the charter does not authorize the Masonic Orders to engage in any activity through which any individual would obtain any financial benefit or gain and the lodges support the Grand Lodge in permanent fixed and continuous projects of a charitable nature. Regarding the use of the building for holding lodge meetings, initiations and teaching Masonry and its principles, there are cases which answer the question in both the affirmative and the negative. In the case of People v. Dixon Masonic Bldg. Ass'n, 348 Ill. 593, 181 N.E. 434, the majority opinion held that such use would not defeat the exemption. In the case of Ancient & Accepted Scottish Rite of Freemasonry v. Board of County Commissioners, 122 Neb. 586, 241 N.W. 93, 81 A.L.R. 1166 (1932), the court held that the building so used was exempt from taxation. In Fitterer v. Crawford, 157 Mo. 51, 57 S.W. 532, 50 L.R.A. 191, the Supreme Court of Missouri stated:

" * * * Our conclusion is that Masonic lodges are organized for charitable and benevolent purposes, with no incentive to private or corporate gain, but whose revenues, derived from whatever source they may be, are applied to the payment of their current expenses, and the relief of their afflicted and needy members and their families; and, although their charity is restricted to such use, they are charitable institutions."

Also, many cases from other states have held that the Masonic Lodge is a charitable institution and exempt from taxation if the property sought to be exempted is being used exclusively for Masonic purposes. State ex rel. Bertel et al. v. Board of Assessors, 34 La.Ann. 574; Plattsmouth Lodge No. 6, A. F. & A. M. v. Cass County, 79 Neb. 463, 113 N.W. 167; Horton v. Colorado Springs Masonic Bldg. Soc., 64 Colo. 529, 173 P. 61, L.R.A.1918E, 966. In the case of In Re Burroughs' Estate, supra, the case of City of Houston v. Scottish Rite Benevolent Ass'n, supra, was cited as holding to the contrary; however, it is significant to note that the Scottish Rite case was decided on the basis of an agreement of the parties that certain Masonic bodies used the building for purposes not wholly charitable.

In the case of People ex rel. Nelson, County Collector v. Rockford Masonic Temple Bldg. Ass'n, 348 Ill. 567, 181 N.E. 428 (wherein the court denied the exemption because the main purpose of the lodge was to furnish social entertainment for its members), it was significantly pointed out in a concurring opinion:

" * * * That the Masonic order is a beneficent and charitable organization has been so many times held by this and other courts of this country as to put that question beyond the realm of debate.

" * * * Charity, in a legal sense, is not confined to mere almsgiving or relief of poverty and distress but embraces the improvement and happiness of man. A charitable use, where neither law nor

---

1. In the case of City of San Antonio v. San Antonio Conservation Society, Inc., 448 S.W.2d 528 (Tex.Civ.App.—San Antonio 1969, reversed—455 S.W.2d 743 (Tex.Sup.1970)), the San Antonio Court of Civil Appeals held that Sections 20 and 22 of Article 7150 were unconstitutional. An examination of the 1967 Legislative Acts discloses that the Section 22 referred to in the opinion of the Court of Civil Appeals was not the same Section 22 above mentioned, but dealt with a different subject and was subsequently changed to Section 22a.

public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man."

In American Society for Testing and Materials v. Board of Revision of Taxes, Philadelphia County, 423 Pa. 530, 225 A.2d 557, it was pointed out that the word "purely" as used in a constitutional provision authorizing the legislative body to exempt from taxation property used for "purely public charity" meant that the institution must be *entirely free from private profit motive,* and the phrase "purely public charity" was not intended to apply only to the Samaritanism of distributing alms to the poor.

■ In the above cited case of San Antonio Conservation Society, Inc., v. City of San Antonio, the Texas Supreme Court has recently determined that pure public charity is not wholly confined to almsgiving or providing for physical needs, but includes also the activities of institutions that contribute to the public good in other ways by assuming burdens and obligations which might otherwise be borne by the state or community. To be "charitable" within the meaning of such case we find no requirement that any specific portion of the institution's activities or expenditures be of the almsgiving type. It can be reasonably asserted, particularly in these times of social stress which challenge the perpetuation of voluntary organizations dedicated to altruistic purposes, that the whole operation of our governmental system has manifested an attitude, purpose and interest in lending encouragement and providing inducements favorable to nongovernmental institutions and organizations which promote the betterment, improvement and happiness of mankind. Further, in the light of the foregoing, it is reasonable to consider as a justification for the tax exemption here involved that the promotion and encouragement of the accomplishment of such worthy objectives to such extent should inure to the ultimate public good and result in a substantial and whole-

some contribution toward the wellbeing, improvement and happiness of mankind, not confined to almsgiving alone, which otherwise might reasonably become an obligation to be borne by the community and state.

It is vigorously contended by appellees that in this particular case the use of the property by Appellant Lodges for conducting lodge meetings, initiations and ceremonies incident to the work and activities of the Masonic Orders operates to defeat the appellants' claim that the property is used wholly for charitable purposes.

When the litigants submitted to the trial court the question of whether the property is exempt from taxation under our Constitution and statutes, they chose to do so on stipulated facts. Under the stipulations, paraphrased, the defendant lodges are governed by "the charters * * * for charitable and benevolent purposes, and for the practice of the art of Ancient, Free and Accepted Masonry, * * * fraternal, educational and charitable in character"; that the property has always been used only for lodge purposes; that the "property involved in this suit is used for conducting lodge meetings, initiations and ceremonials *incident* to their work of practicing the art of Ancient, Free and Accepted Masonry and promoting good fellowship and brotherly love among their members and adherents," and occasional dinners. That the organizations are engaged in a multitude of laudable, charitable and educational programs under the stipulations there can be no doubt.

■ The test is whether the property was used exclusively for purely public charity. The property was used for lodge purposes—fraternal, educational and charitable. The only pertinent reference in the stipulations to the fraternal part is that the property is used for fraternal purposes *incident* to the Masonic work. "Incident," in law, means pertaining to, or involved in, though not an essential part of another thing. The use of the property purely in-

cidental to the primary purposes and functions of the organization does not defeat the exemption. Hilltop Village, Inc. v. Kerrville Independent School District, supra. Thus, under the stipulations in this record, the property of the Appellant Lodges sought to be taxed is within the constitutional and statutory exemption.

In view of the stipulations of the parties when considered in conjunction with the established pattern and guidelines for the application of constitutional and statutory tax exemptions in Texas, we sustain the appellants' claim for ad valorem tax exemption under Section 2 of Article VIII of the Texas Constitution and Sections 7 and 22 of Article 7150, V.A.T.S. Accordingly, the judgment of the trial court is reversed and judgment rendered that appellees take nothing in their suit against the Appellant Lodges.

JOY, Justice (dissenting).

I respectfully dissent.

The initial consideration, which I think is determinative of the issue here presented, is whether or not the property is exempt as an institution of purely public charity under the Constitution of this state. The question is whether or not the property itself is used exclusively for purely charitable purposes. The Texas Supreme Court in River Oaks Garden Club v. City of Houston, 370 S.W.2d 851, 853 (Tex.Sup.1963) stated:

"Because of the wording of Sec. 2, Art. VIII, as it was written originally, we held in Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Tex. 698, 5 S.W. 519, that it did not authorize exemption of institutions of purely public charity as such but only that property which was owned by such institutions and *was used exclusively by them for purely public charity*. We have adhered to that construction through the years in spite of frequent changes in

internal language and punctuation in the section, and have denied exemption of property, *not used exclusively by the owner for purposes* of purely public charity. * * * "[1]

Again in Hilltop Village, Incorporated v. Kerrville Independent School District, 426 S.W.2d 943, 946 (Tex.Sup.1968) the court stated:

"To qualify under these constitutional and statutory requirements, an institution must be one of purely public charity in the purposes for which it is formed and in the manner and means it has adopted for the accomplishment of such purposes; this being so, and in addition, the properties which are the subject of the claimed exemption must be *owned and used exclusively* by the institution in furthering its charitable activities. Briefly stated, there must be a *dedication of the properties to charitable uses accompanied by actual uses for such purposes.*"

No useful purpose would be served to review cases from other jurisdictions. Suffice it to say that some jurisdictions are liberal in their interpretation and construction of similar constitutional and statutory provisions, while others adhere to a strict construction. Our Texas courts generally have been committed to a strict construction and interpretation from the earliest judicial decisions. In reviewing the stipulations of fact, it is found that between 15% and 40% of the initiation fees and annual dues paid by the members of the four lodges are forwarded on to the various Grand Lodges which apparently in turn use the monies for charitable purposes. Although the stipulation recites that the lodges give as one of their purposes aid to sick and distressed Masons and their families, there is no showing as to just how much of this charitable work is done in relation to the total use of the property. The use of the property here involved for purposes of initiations, ceremonials, conferring

---

1. All emphasis mine unless otherwise stated.

of degrees, occasional dinners, payment of indigent members' dues and promotion of fellowship and brotherly love, although perhaps beneficial to the lodge members more so than those in need of charity, do not in my opinion meet the strict requirement of a use for purely public charity set forth in the Constitution and as interpreted by our courts. City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978 (1921); Benevolent & Protective Order of Elks, Lodge No. 151 v. City of Houston, 44 S.W.2d 488 (Tex.Civ.App.— Beaumont 1931, writ ref'd).

The majority cites the San Antonio Conservation Society, Inc. v. City of San Antonio, 455 S.W.2d 743 (Tex.Sup.1970) in support of the tax exemption. As I view that case, the court held that the Society, through the preservation, maintenance, and upkeep of the historical building had assumed an obligation or duty that otherwise might have become a burden or obligation upon the community or state. In this case the appellant has not demonstrated that the property is used in such a manner and to a material extent so as to relieve the community or state of a duty or obligation that might otherwise be imposed upon the community or state. The purely public charitable purposes and works of the Grand Lodges, if that be what they are, are not carried out through the local lodges here involved, nor is the subject property used by the Grand Lodges for those activities.

Exemptions from taxation are not favored and any doubts are resolved against the exemptions. This is so because of the basic concept of equality of the sharing of the tax burdens by the citizenry. The burden of proof is upon the party claiming a constitutional or statutory tax exemption to prove, without any reservation of doubt, that the property comes within the exemption. Benevolent & Protective Order of Elks, Lodge No. 151 v. City of Houston, supra. In order for the property to be exempt a substantial portion of the use of the property must be directed toward ac-

tivities of purely public charity. I am of the opinion that the appellant has not met the burden imposed upon it to demonstrate clearly that the property comes within the exemption.

I would affirm the trial court judgment.