AMERICAN LAW INSTITUTE,
Petitioner

v.

COMMONWEALTH of Pennsylvania,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 9, 2005.

Decided Sept. 15, 2005.

---

1. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–8297. P.L. 6, *as amended*, 72 P.S. §§ 7101–8297.

Donald W. Kramer, Philadelphia, for petitioner.

Kevin A. Moury, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, LEADBETTER, Judge (P.), and KELLEY, Senior Judge.

OPINION BY President Judge COLINS.

American Law Institute (ALI) petitions for review of the Board of Finance and Revenue's (Board) order denying the renewal of its sales and use tax exemption [1] as an institute of purely public charity.

---

**1.** Section 204(10) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7204(10), exempts from sales and use tax "[t]he sale at retail, or use by (i) any charitable organization, volunteer firemen's organization or nonprofit educational institution...."

The facts as stipulated by the parties[2] are as follows. ALI is a nonprofit corporation organized under the law of the District of Columbia with its principal place of business in Philadelphia. ALI's charitable purposes are education and legal reform; more specifically, as stated in its certificate of incorporation, its goals are the clarification and simplification of the law and its adaptation to social needs, improving the administration of justice, and the encouragement and promotion of scholarly and scientific legal work. ALI is exempt from federal income tax under IRC Section 501(c)(3). Its elected membership consists of legal scholars, attorneys, and members of the judiciary. Ex officio members include the U.S. Supreme Court Justices, the chief judges of the Circuit Courts of Appeals, the U.S. Attorney General and Solicitor General, the chief judge of the highest state court of each state, law school deans, bar association presidents, and the leaders of other prominent legal organizations. Members are required to actively participate in ALI's work. For 2002, volunteers spent an estimated 22,000 hours annually on ALI law reform projects and an estimated 66,000 hours on ALI–ABA education programs and materials.

Among ALI's current projects are the drafting of a proposed federal statute for the uniform treatment of foreign judgments; researching and evaluation of criminal sentencing nationwide and under the Model Penal Code; acting as an editorial board for the National Conference of Commissioners on Uniform State Laws, including the development of international annotations to the Uniform Commercial Code; collaborating on the development of a uniform procedural system for adjudicating international disputes; developing principles of the law of nonprofit organizations; an ongoing analysis of World Trade Organization decisions; clarifying and updating the Restatements of the Law Third, which it developed between 1923 and 1944; and the development of principles governing intellectual property and aggregate litigation. In collaboration with the American Bar Association (ABA), ALI–ABA offers legal education courses and materials through a variety of media.

In 1994 ALI developed its Principles of Corporate Governance, which continue to be adopted throughout the country. Its Statement of Essential Human Rights was used as the basis for the United Nations' Universal Declaration of Human Rights adopted in 1948. In recent years ALI has worked on international projects including the development of transnational rules and procedures, international jurisdiction and judgments, and a Restatement of Foreign Relations Law of the United States.

In February 2002, ALI applied for renewal of its sales and use tax exemption, which was denied. The Board of Appeals and Board of Finance and Revenue upheld the denial of exemption.

█ Article VIII, Section 2(a)(v) of the Pennsylvania Constitution states, in pertinent part, "The General Assembly may by law exempt from taxation: .... (v) Institution of purely public charity...." Pa. Const. art. VIII, § 2(a)(v). Because the Constitution itself does not exempt a taxpayer from taxation, but rather permits the legislature to do so within limits, an entity seeking or defending a tax exemption must first establish that it is a purely public charity within the meaning of Article VIII, Section 2 by meeting the minimum constitutional qualifications set forth

---

**2.** The facts stipulated by the parties on appeal are binding and conclusive and should be regarded as this Court's findings of fact.

*Philadelphia Gas Works v. Commonwealth,* 741 A.2d 841 (Pa.Cmwlth.1999), *affirmed,* 562 Pa. 621, 757 A.2d 360 (2000).

in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP* ), and second that it meets statutory qualifications for exemption under Section 5 of the Institutions of Purely Public Charity Act (Charity Act).[3] *Community Options, Inc. v. Board of Property Assessment, Appeals and Review,* 571 Pa. 672, 813 A.2d 680 (2002). In determining whether an institution is one of purely public charity prior cases have limited value as precedent because of the continually changing nature of the concept of charity and the variable circumstances of time, place, and purpose. *City of Washington v. Board of Assessment Appeals,* 666 A.2d 352 (Pa.Cmwlth.1995), *affirmed,* 550 Pa. 175, 704 A.2d 120 (1997) (quoting *G.D.L. Plaza v. Council Rock School District,* 515 Pa. 54, 59–60, 526 A.2d 1173, 1175 (1987)).

■ An entity meets the constitutional qualifications as a purely public charity if it possesses the following characteristics: 1) advances a charitable purpose, 2) donates or renders gratuitously a substantial portion of its services, 3) benefits a substantial and indefinite class of persons who are legitimate subjects of charity, 4) relieves the government of some of its burden, and 5) operates entirely free from private profit motive. *HUP,* 507 Pa. at 12–13, 487 A.2d at 1311–12. At issue in the present case is only the question of whether ALI benefits a substantial and indefinite class of persons who are legitimate subjects of charity.[4]

■ The Board argues that ALI is not entitled to the exemption because its purpose is to provide educational services, that it does not benefit an indefinite number of persons but rather a large, definite class of beneficiaries, and that its primary beneficiaries are attorneys, who are not the legitimate subjects of charity. In support of its arguments, the Board relies primarily on *PICPA Foundation for Education and Research v. Commonwealth,* 535 Pa. 67, 634 A.2d 187 (1993), and *Community Accountants v. Commonwealth,* 655 A.2d 652 (Pa.Cmwlth.1995), *affirmed,* 544 Pa. 259, 676 A.2d 194 (1996). In *PICPA* the Supreme Court upheld the denial of a sales and use tax exemption after concluding that the facts demonstrated that the benefit bestowed on the general public was at most indirect. PICPA's purpose was the encouragement of education and research in accounting, and its services consisted of disseminating accounting information and offering related conferences whose attendees were primarily accountants. In *Community Accountants,* the exemption was denied on the same grounds; its purpose was to provide free accounting and financial management services to small nonprofit organizations and small businesses. We find both of these cases to be factually distinguishable.

The word "charitable," in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public."

---

3. Act of November 26, 1997, P.L. 55, 10 P.S. § 375.

4. The Board's order states that ALI failed to establish that it qualifies as a purely public charity but does not specifically state which of the requirements it failed to meet. The briefs of both ALI and the Board frame the issue before this Court as solely the fourth of the *HUP* and Charity Act requirements, whether ALI benefits a substantial and indefinite class of persons who are legitimate subjects of charity.

*In re Hill School,* 370 Pa. 21, 25, 87 A.2d 259 (1952) (quoting *Taylor v. Hoag,* 273 Pa. 194, 196, 116 A. 826 (1922)). "[W]hatever is gratuitously done ... for the advancement of the public good is a public charity. In every such case as the public is the beneficiary, the charity is a public charity." *Trustees of Academy of Protestant Episcopal Church v. Taylor,* 150 Pa. 565, 573, 25 A. 55, 56 (1892).

In *American Society for Testing Materials v. Board of Revision of Taxes,* 423 Pa. 530, 225 A.2d 557 (1967) (*ASTM* ), the Supreme Court upheld the Society's exemption as a purely public charity over the City of Philadelphia's objection that its principal beneficiaries were its membership, which was not open to the public, and that the Society had no contact with the public save through its library, which was not a general interest library and rarely used by the public. The Court concluded that the Society primarily benefited the general public. The Court has since reinforced the concept that a purely public charity can provide members of the general public with resources that would not otherwise be within their reach, and that "it is fully consistent with the fundamental character of a purely public charity to benefit the general public." *Unionville–Chadds Ford School District v. Chester County Board of Assessment Appeals,* 552 Pa. 212, 714 A.2d 397 (1998). *See also Appeal of Sewickley Valley YMCA,* 774 A.2d 1 (Pa.Cmwlth.2001).

As ALI argues, the Board's analysis considers only a portion of ALI's purpose and activities. It is undisputed that ALI's primary purposes, as stated in its articles of incorporation and as exemplified by the bulk of its activities, are legal reform, clarification and simplification of the law and its adaptation to social needs, and improving the administration of justice. In furthering those precise goals, ALI has undertaken the restatement of the common law for the benefit of all those affected by that law, developed the Uniform Commercial Code, an achievement that requires no further explanation, developed the Model Penal Code, making criminal codes nationwide more rational and coherent. ALI's Statement of Essential Human Rights formed the basis for international human rights law, and its work in developing transnational civil procedure, restatements of foreign law, and international jurisdiction and judgments are fundamental to established and developing nations worldwide. Judges and justices of the highest of the nation's courts contribute to the accomplishment of ALI's goals through their membership and participation. To paraphrase the Supreme Court in *ASTM,* it must be apparent from even this meager summarization of ALI's spheres of activity that it is does more than benefit attorneys. As New York trial lawyer, Henry G. Miller, once said, "The legal system is often a mystery, and we, its priests, preside over rituals baffling to everyday citizens." Legal reform and clarification and simplification of the law and its adaptation to social needs clearly benefit society as a whole.

To the extent that the Board focused solely on ALI's legal education activities, again paraphrasing *ASTM,* whatever gain can be said to accrue to attorneys eventually accrues to the benefit of the public as well. Continuing legal education is generally an annual requirement for an attorney to maintain his or her license to practice law; however, the purpose of continuing legal education is professional responsibility, which helps ensure that attorneys are able to discharge their duties to the public. *See* Memorandum of Understanding Between ALI and the ABA, Stipulations of Fact, Exhibit B.

Having determined that ALI benefits a substantial and indefinite class of persons

who are legitimate subjects of charity, we similarly conclude that it meets the statutory qualifications for exemption under Section 5(e) of the Charity Act, 10 P.S. § 375(e), which provides that an institution of purely public charity is one that meets the criteria set forth in subsections (b) through (e). Subsection (e), Charity to persons, in terms identical to those used in the *HUP* test, requires that the institution benefit a substantial and indefinite class of persons who are legitimate subjects of charity. 10 P.S. § 375(e)(1). Under the statutory qualification, a purely public charity exempt from taxation may be one that provides services to the general public. *Appeal of Sewickley Valley YMCA.*

Accordingly, the order of the Board of Finance and Revenue is reversed.

## *ORDER*

AND NOW, this 15th day of September 2005, the order of the Board of Finance and Revenue in the above-captioned matter is reversed.

The Chief Clerk is directed to enter judgment in favor of American Law Institute and against the Commonwealth of Pennsylvania unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i).

Dissenting Opinion by Senior Judge KELLEY.

I respectfully dissent. I believe the majority's holding, that the American Law Institute (ALI) is entitled to a renewal of its sales and use tax exemption as an institute of purely public charity, erodes the meaning of the term "charity."

In support of its holding, the majority primarily relies upon *American Society for Testing Materials v. Board of Revision of Taxes,* 423 Pa. 530, 225 A.2d 557 (1967) (ASTM), wherein the Supreme Court upheld the Society's exemption as a purely public charity over the City of Philadelphia's objection that its principal beneficiaries were its membership, which was not open to the public, and that the Society had no contact with the public save through its library. Therein, the Supreme Court stated that "[w]hatever gain accrues to industry through ASTM eventually accrues to the benefit of the public as well." *ASTM,* 423 Pa. at 536, 225 A.2d at 560. However, this Court later questioned the Supreme Court's reliance in ASTM on an indirect public benefit and determined that the same was no longer valid as a result of the criteria established in the Supreme Court's subsequent decisions in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP* ) and *G.D.L. Plaza Corporation v. Council Rock School District,* 515 Pa. 54, 526 A.2d 1173 (1987) and their progeny. *See Board of Revision of Taxes of the City of Philadelphia v. American Board of Internal Medicine,* 154 Pa.Cmwlth. 204, 623 A.2d 418, 421 (1993), *petition for allowance of appeal denied,* 538 Pa. 636, 647 A.2d 511 (1994). In *Board of Revision of Taxes of the City of Philadelphia,* this Court stated that "[w]e have followed those decisions in holding that the institution's charitable activity must directly benefit the 'object' of the charity, and that 'indirect' benefits to the public are not considered charitable." [1] *Id.*

I recognize that the majority states that "[t]he [Supreme] Court has reinforced the

---

1. I suggest that the Supreme Court's reliance on an indirect public benefit is also no longer valid as a result of the statutory qualifications for exemption set forth in Section 5 of the Institutions of Purely Public Charity Act (Charity Act), Act of November 26, 1997, P.L. 55, 10 P.S. § 375.

concept that a purely public charity can provide members of the general public with resources that would not otherwise be within their reach and that 'it is fully consistent with the fundamental character of a purely public charity to benefit the general public.' " Majority Opinion at 1092 (quoting *Unionville–Chadds Ford School District v. Chester County Board of Assessment Appeals*, 552 Pa. 212, 714 A.2d 397 (1998)). However, I believe that the majority has misinterpreted the Supreme Court's holding in *Unionville–Chadds Ford School District* and expanded the same beyond the Supreme Court's intent.[2]

In *Unionville–Chadds Ford School District*, when reviewing whether real property owned Longwood Gardens, Inc.[3] was exempt from real estate tax, the Supreme Court rejected the notion that the general public cannot be a subject of charity because such a class of beneficiaries would not be limited to those who are incapacitated or financially distressed. In so doing, the Supreme Court held that the beneficiaries of charity need not be limited to those who are in distress and that there is no requirement that all of the benefits bestowed by a purely public charity go only to the financially needy. *Unionville–Chadds Ford School District*, 552 Pa. at 219, 714 A.2d at 400. The Supreme Court stated further that "an essential feature of public charity 'is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite pub-

lic or unrestricted quality that gives it its public character.' " *Id.* at 220, 714 A.2d at 401 (quoting *Donohugh's Appeal*, 86 Pa. 306, 313 (1878)). In other words, a charity can benefit all persons without regard to economic status or whether such persons are rich or poor but the requirement remains that an entity must benefit a substantial and indefinite class of persons (regardless of economic status) who are legitimate subjects of charity in order to meet the constitutional qualifications as a purely public charity. *See HUP*.

Accordingly, I do not believe that the Supreme Court in *Unionville–Chadds Ford School District* revalidated the notion that indirect benefits to the general public are considered charitable. Therefore, I believe that this case is more akin to the line of cases that the majority finds factually distinguishable and which have upheld the denial of a sales and use tax exemption after concluding that the facts demonstrated that the benefit bestowed on the general public was at most indirect.

For example, *PICPA Foundation for Education and Research v. Commonwealth*, 535 Pa. 67, 634 A.2d 187 (1993), involved PICPA, a nonprofit corporation, which was established for the purpose of encouraging education and research in accounting. The Board denied PICPA's petition for a refund after determining that PICPA did not qualify as a nonprofit education institution because any benefit to

---

**2.** As stated by Justice Nigro in his dissent to *Unionville–Chadds Ford School District*, "the HUP test should instead be applied to reinforce the traditional characteristics of charities rather than expand their scope to the point that the term charity is meaningless." *Unionville–Chadds Ford School District*, 552 Pa. at 222, 714 A.2d at 402 (dissenting opinion by J. Nigro).

**3.** Longwood Gardens, Inc., is a very large and world-renowned public garden located in

Chester County, just outside the Philadelphia area. *Unionville–Chadds Ford School District*, 552 Pa. at 215, 714 A.2d at 398. The gardens have been open to the public since the 1920s and have been under the control of a nonprofit operating foundation since 1970. *Id.* More than 800,000 visitors per year make use of the gardens. *Id.* Longwood operates in heavy reliance on endowment funds since its operating expenses far exceed its revenues. *Id.* at 216, 714 A.2d at 399.

the general public was only incidental. This Court affirmed the Board's determination and on review to the Supreme Court, the Court found that to receive tax exempt status under Section 204(10) of the Tax Reform Code of 1971,[4] a corporation had to be considered a purely public charity, meaning the organization had to provide a valuable service provided to the public that the government would otherwise have to provide. *PICPA*, 535 Pa. at 73, 634 A.2d at 190. The Supreme Court concluded that PICPA did not meet this requirement stating that "[a]lthough [PICPA's] seminars and study groups are open to the public and in fact are advertised in several newspapers of general circulation, only 38% of the attendees are not PICPA members. Furthermore, the subject is of such a technical nature, it is clear that the courses are geared and intended to benefit individuals who have a professional or occupational interest in accounting subjects and not intended to benefit an indefinite number of people." *Id.* at 74, 634 A.2d at 191. Accordingly, the Supreme Court held that the benefit bestowed upon the general public by PICPA's seminars and study groups was at most indirect and ruled that PICPA was not entitled to a tax refund. *Id.*

In *Community Accountants v. Commonwealth*, 655 A.2d 652 (Pa.Cmwlth. 1995), *affirmed*, 544 Pa. 259, 676 A.2d 194 (1996), this Court likewise determined that a nonprofit corporation which performed accounting services for other nonprofit groups and charities was not entitled to sales tax exempt status under Section 204(10) of the Tax Reform Code of 1971. Specifically, this Court concluded that Community Accountants was not a purely public charity because it directed its services at a large, but definite, class of beneficiaries which consisted of small

businesses, sole proprietors, and small nonprofit organizations with limited profits and resources, as opposed to the general public. *Community Accountants*, 655 A.2d at 654.

Herein, the stipulated facts clearly show that any benefit bestowed upon the general public by ALI is, at most, indirect. The class of beneficiaries who benefit from ALI's services is a definite class consisting primarily of attorneys and those associated with the legal profession. While ALI may have undertaken legal reform, clarification and simplification of the law and its adaptation to social needs, and improving the administration of justice thereby engaging in several spheres of activity, the bottom line is that all this activity is directed to professionals such as attorneys and paralegals, legal scholars, members of the judiciary and other legal organizations and only indirectly benefits society as a whole. The fact remains that ALI services a definite, albeit large, class of beneficiaries.

Moreover, while it is true that whatever gain can be said to accrue to attorneys eventually accrues to the benefit of the public as well, said gain is still an indirect benefit to the general public as opposed to a direct benefit. Pursuant to *PICPA, Community Accountants*, and the *Board of Revision of Taxes of the City of Philadelphia*, such indirect benefit is insufficient to qualify an entity as a purely public charity under the Pennsylvania Constitution, *HUP*, and the Charity Act. *See also Biosciences Information Service v. Commonwealth*, 101 Pa.Cmwlth. 384, 516 A.2d 434 (1986) (Although the public benefited secondarily from BIOSIS' service, the purpose of BIOSIS, to advance knowledge of theoretical and applied biology through research and publications, was not charitable in nature in that the primary beneficiaries

4. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7204(10).

were various organizations who subscribed for a fee to BIOSIS' periodicals and requested searches of its library.).

I believe that the majority's holding clearly weakens the stringent standards set forth in *HUP*. Thus, if the majority's position stands, any publisher, if they became nonprofit, of legal related materials, such as West Publishing, which publishes *Standard Pennsylvania Practice*, the Lawyers Cooperative Publishing, which publishes *Pennsylvania Appellate Practice*, and Lexis–Nexis, which publishes the *Pennsylvania Law Encyclopedia*, could easily satisfy the third prong of the *HUP* test and be considered a charity on the basis that any advice or guidance contained in their publications may eventually benefit members of the general public.

Accordingly, I would affirm.